[No. 3956.]

WEIR ET AL. v. THE IRON SPRINGS CO. ET AL.

1. MORTGAGES—RELEASE—SALES BY MORTGAGOR FREE FROM LIEN.
A mortgage authorizing the mortgagor to sell parcels of the mortgaged premises upon certain terms, and obtain a release of the mortgage lien on the premises so sold, confers power upon the mortgagor to sell free and clear of the mortgage lien only upon the terms and conditions specified in the mortgage.

2. SAME.
Where a deed of trust authorized the grantor to sell parcels of land included in the deed of trust on terms of not less than one fourth cash, and deferred payments to be secured by deed of trust on the property sold, as a first lien, and a certain proportion of the cash paid, together with the notes taken, to be transferred to and held by the trustee of the orginal trust deed, to be applied on the debt secured, who, upon receipt thereof, was to execute a release of the deed of trust, did not authorize the grantor in the trust deed to sell free from the lien thereof by executing to the purchaser a bond for title, or by a deed deposited in escrow to be delivered upon payment of the purchase price.

3. SAME—DEFAULT OF MORTGAGOR.
Where a deed of trust authorized the grantor to convey parcels of the premises free from the lien of the trust deed upon certain terms at any time before default of the mortgagor and at any time when no default existed, and the deed of trust bound the grantor to pay taxes and made the failure to pay taxes and interest as it fell due a default for which foreclosure might be had, he could not sell any part of the premises free from the lien while any part of the interest was in arrears or any tax was due and unpaid even though he complied with all the other terms of sale.

4. MORTGAGES—DEFAULT IN INTEREST AND TAXES—WAIVER OF DEFAULT.
Where a deed of trust bound the grantor to pay taxes and made a failure to pay taxes and interest, when due, a default for which foreclosure might be had, the fact that the grantor gave the trustee a chattel mortgage as additional security for the bonds, as well as for past due interest and taxes paid by the trustee, was not a waiver of the default in the payment of any future taxes or interest.

*Error to the District Court of El Paso County.*

THIS action was commenced by plaintiffs in error for the

purpose of obtaining a decree releasing certain real estate in an addition to the town of Manitou, from a mortgage lien, and to set aside the proceedings foreclosing such mortgage, so far as it affected the subject-matter of the controversy. From a decree dismissing their complaint, and denying the relief demanded, they bring the case here for review on error. The facts upon which the rights of the respective parties depend will be found in the opinion, in connection with the questions determined.

Mr. J. W. ADY and Mr. JOHN K. VANATTA, for plaintiffs in error.

Mr. A. E. PATTISON, for defendants in error.

MR. JUSTICE GABBERT delivered the opinion of the court.

April 1, 1893, The Iron Springs Company executed a deed of trust upon certain real estate, which included that in controversy, to the Metropolitan Trust Company, for the purpose of securing certain bonds. This deed of trust, as subsequently amended, provided, so far as necessary to notice at present, that the mortgagor was at liberty to make sales of parcels of the mortgaged premises, and to procure the release of the property so sold from the lien of the mortgage upon the terms therein provided. These terms, so far as material to the questions now considered, were to the effect that no sale of any parcel of the real estate included in the mortgage should be made for less than one fourth cash; that deferred payments on the property so sold should be secured by a deed of trust thereon, as a first lien; that the notes taken for the unpaid purchase price should be payable in gold coin, and bear interest at a specified rate; that a certain proportion of the cash paid, together with notes taken, were to be transferred to and held by the trustee, which, upon receipt thereof, was to execute a release of the deed of trust of the Iron Springs Company on the property so sold. February 20,

1895, a bond for a deed was made by the Iron Springs Company to plaintiff Weir, as trustee, by which the former agreed to sell and convey to the latter the premises in question, for the sum of $4,000, to be paid as follows: $1,000 on or before March 20, 1895; $1,000 on or before March 20, 1896; $1,000 on or before March 20, 1897, and $1,000 on or before March 20, 1898, with interest on the deferred payments at the rate of eight per cent per annum. March 18, 1895, plaintiffs paid the Iron Springs Company the first payment, as provided in the bond, and gave their notes for the remainder of the purchase price, in accordance with the terms and conditions of the bond. On July 11, 1895, the Iron Springs Company executed a deed to plaintiffs for the premises in controversy, and later deposited it in escrow with defendant Frost, with instructions to deliver the same to the grantees upon payment of the balance of the purchase price, in accordance with the terms and conditions of the bond. On March 13, 1896, plaintiffs tendered to Frost the balance of the purchase price due upon the premises, and demanded the deed, which he refused to deliver. August 21, following, the Iron Springs Company received from Frost this deed. Plaintiffs then paid to this company the balance of the purchase price, with interest, and received the deed. Thereupon, the Iron Springs Company transmitted to the trustee this sum, with the request that it execute and return a release of the deed of trust upon the premises in dispute, which request was refused, and the remittance returned to the Iron Springs Company, which, in turn, repaid the same to the plaintiffs, who subsequently tendered it to the trustee, which tender was again refused. Subsequent to these acts, the deed of trust was foreclosed.

The first question to determine is, what rights have plaintiffs acquired under and by virtue of their contract entered into with the Iron Springs Company, or the deposit of the deed in escrow with Frost, independent of any other considerations, or subsequent action upon their part? The stipulation in the deed of trust, respecting sales of parcels of the mortgaged premises, authorized the Iron Springs Com-

pany to sell and transfer title to the premises in dispute, discharged of the lien of the deed of trust (*Woodward v. Jewell*, 140 U. S. 247), provided, however, that the sale was made strictly in accordance with the terms and conditions of the deed of trust, upon compliance with which a release thereof was to be executed by the trustee. 1 Jones on Mortgages, § 79. In other words, this stipulation authorized the mortgagor to convey portions of the mortgaged premises, free and clear of the mortgage lien, upon certain terms and conditions. When not for cash, the deferred payments were to be secured by mortgage or deed of trust upon the premises conveyed, which, with the notes for such payments, together with a certain proportion of the cash, were to be transferred to the trustee, in lieu of the mortgage lien upon the premises so sold. The contract entered into originally between the Iron Springs Company and plaintiffs did not contemplate any such an arrangement; on the contrary, for the deferred payments they gave only their individual notes. There is no provision in this stipulation in the trust deed which required the trustee to recognize any contract made between the Iron Springs Company and the plaintiffs with respect to the deposit of the deed in escrow, to be delivered upon payment of the sums specified; in short, as to the deferred payments there was no attempt whatever to comply with the stipulation in the deed of trust, empowering the mortgagor to sell parcels of the mortgaged premises, discharged of the lien of the deed of trust. It was upon record; plaintiffs. were bound to take notice of its provisions, and, in fact, as.the evidence discloses, did examine a copy. The contract of February 20, 1895, not being one which the trustee was bound to recognize under the stipulation, in the deed of trust relative to partial releases, plaintiffs are not entitled to the relief demanded by virtue of any of the terms and conditions of that contract. The same is true with respect to the deposit of the deed in escrow.

None of the authorities cited by counsel for plaintiffs, in support of their proposition that they acquired rights under

the contract of February 20, 1895, or the deposit of the deed with Frost, contravene this conclusion, but on the contrary, support it. In those cases it was held, as we decide here, that a mortgage authorizing the mortgagor to sell parcels of the mortgaged premises upon certain terms, and obtain a release of the mortgage lien on the premises so sold, conferred power upon the mortgagor to sell free and clear of the lien created by the mortgage only upon the terms and conditions specified in the mortgage, and the sales having been made in accordance with the provisions of the mortgage, with respect thereto, the vendee was entitled to have the property purchased discharged of the mortgage lien. *Vawtor v. Crafts*, 41 Minn. 14; *Crisman v. Hay*, 43 Fed. Rep. 552; *Nims v. Vaughn*, 40 Mich. 356; *Lane v. Allen*, 162 Ill. 426; *Clark v. Fontain*, 10 N. E. Rep. 831.

We recognize this doctrine to its full extent, but it cannot avail plaintiffs, for the simple reason that the deed of trust by the Iron Springs Company did not authorize the mortgagor to sell the premises in controversy on the terms mentioned in the contract of February 20, 1895, or to secure deferred payments by depositing the deed in escrow; and hence, neither the bond for a deed nor the escrow agreement initiated rights in the plaintiffs which obligated the trustee, upon compliance with the terms and conditions of either, to release the deed of trust upon the premises so sold.

The next question presented is, whether plaintiffs are entitled to relief by virtue of the payment of the last three instalments of the purchase price, the tender thereof to the trustee, and the demand for a release of the deed of trust upon the premises in controversy. The deed of trust provided: " Until default shall be made by the springs company, as specified herein, and at any time when no such default shall exist, the springs company shall at all times be at liberty to make sales in its discretion, of its real and personal property hereby conveyed in trust, and to procure the release of the property so sold by the trustee in the manner and upon the terms herein provided." The solution of this question

depends primarily upon whether or not the tender to Frost, at the time of the payment to the mortgagor, August 21, 1896, or when the tenders were made to the trustee, the Iron Springs Company was in default in the performance of any of the conditions upon it imposed by the deed of trust. The reservation in a mortgage authorizing the mortgagor to convey parcels of the mortgaged premises, free and clear of the mortgage lien, upon the terms and conditions defined in the mortgage, confers an express, but limited, authority, which can only be exercised within the terms of the power reserved to the mortgagor. 1 Jones on Mortgages, sec. 981. It follows, therefore, that if at the time plaintiffs tendered the money to Frost, made the payment of August 21, 1896, and at the time of tendering the same to the trustee, the mortgagor was in default in the performance of conditions imposed by the deed of trust, its power to sell, free and clear of the lien of the deed of trust, did not exist. *Price v. Kneeland,* 16 Wis. 706. This instrument provided that the mortgagor should discharge the taxes levied upon the mortgaged premises before the same became delinquent. The interest on the bonds secured by the deed of trust was payable semiannually, on the first day of October and April of each year. By the terms of the deed of trust the mortgagor could sell the premises in dispute for cash. The aggregate of the last three payments to the Iron Springs Company and the amount tendered Frost and the trustee, was all the latter could demand as a condition precedent to releasing the premises purchased by plaintiffs from the lien of the deed of trust. This payment was first tendered to the defendant Frost, upon the 13th day of March, 1896. He refused to accept it. The tender was made him because the deed from the Iron Springs Company to the plaintiffs had been deposited with him in escrow. August 21, following, plaintiffs paid the president of the Iron Springs Company the sum originally tendered Frost, with interest. This sum was at once transmitted to the trustee, with a request for a release of the deed of trust upon the premises purchased by plaintiffs, which was refused, and the money

returned to the company.   Counsel for plaintiffs contend that the Iron Springs Company, on each of these dates, was not in default in the performance of any of the conditions imposed by the deed of trust.   This proposition is based upon the fact, that on the 26th day of November, 1895, the Iron Springs Company executed and delivered to the defendants Frost and Peltz, as trustees, a chattel mortgage upon personal property as additional security for the payment of the bonds of the Iron Springs Company, and also for the purpose of securing the mortgagees the repayment to them of moneys advanced for taxes and insurance on the property of the mortgagor, originally incumbered to secure these bonds.   The Iron Springs Company failed to pay the taxes assessed against the real estate described in the deed of trust for the years 1894 and 1895.   It defaulted in the payment of interest maturing October, 1895, and April, 1896.   The most that can be claimed as to the effect of the execution and acceptance of the chattel mortgage to the defendants, Frost and Peltz, is, that it resulted in a waiver of all defaults existing on the part of the Iron Springs Company at the time it was executed and delivered.   It was not intended to waive any defaults which might occur in the future.   On March 13, 1896, the first half of the taxes for the year 1895 upon the mortgaged premises was delinquent.   Therefore, if the tender to Frost upon that date was one which the trustee in the deed of trust was bound to recognize, provided that on this date the conditions were such that the plaintiffs were entitled to a release of the deed of trust by virtue of such tender, it was of no avail, because of the default of the Iron Springs Company in the respect noticed.   August 21, following, the date of the payment to the Iron Springs Company, which was at once transmitted to the trustee, as, also, at the time of the tender by plaintiffs to the latter, the whole of the taxes for 1895 was delinquent, and the interest maturing April 1 preceding was unpaid.   So, conceding that the execution of the chattel mortgage was a waiver of all defaults existing at the time it was given, inasmuch as it did not affect defaults subsequently occurring,

the plaintiffs cannot enforce rights by virtue of its execution and delivery. Under the facts relative to the defaults of the mortgagor, it had no authority to sell the premises in dispute, free and clear of the mortgage lien on March 13, 1896, or on either of the dates the money was paid to it, or tendered the trustee.

The next and final question to determine is, whether or not any arrangement was entered into between the plaintiffs and parties authorized to represent the bondholders, by which an agreement to purchase the premises in controversy was effected upon terms and conditions different from those provided in the deed of trust, which can be enforced in this action. It is contended by counsel for plaintiffs in error that defendants Frost and Peltz were the representatives of the bondholders and the trustee, and as such representatives, had authority to consent to the arrangement entered into between the Iron Springs Company and plaintiffs, and that therefore this agreement should now be enforced, even though it does not comply with the terms and conditions of the deed of trust, which authorized the Iron Springs Company to sell portions of the mortgaged premises free and clear of the mortgage lien. It is doubtful if the plaintiffs are entitled to have this question considered, because their complaint seems to have been drawn solely upon the theory that the bond for a deed, under which plaintiffs' rights were initiated, is a contract which, by the terms and conditions of the deed of trust, can be enforced. It is not necessary, however, to go into an analysis of the pleadings, for the purpose of determining this question, as it is evident from the testimony, that plaintiffs never entered into the agreement for the purchase of these premises relying upon any representations made by either of the defendants, Frost or Peltz, that such agreement, although not complying with the terms and conditions of the deed of trust, would, nevertheless, be recognized by the bondholders. For this reason it is not necessary to determine what the relation of these defendants may have been to the bondholders, or the trustee, or what author-

ity they may have had to represent either of those parties with respect to the mortgaged premises.

The evidence as to what occurred between plaintiffs and the defendants Frost and Peltz is briefly as follows: Weir testifies that he made inquiries of Frost prior to the purchase relative to the interest on bonds and taxes on the mortgaged premises, and that Frost advised him to purchase, because he thought the premises were worth the sum agreed to be paid; that he was also told by Frost that the company was not in default at the time of this conversation. He claims that at the time of the execution of the bond for deed, he was not aware of the fact that the deed of trust made no provision for any such an instrument, or, rather, as he subsequently explained, he considered that a bond for a deed would be the same as a deed and trust deed together; that according to the terms and conditions of the deed of trust, he knew that to secure the deferred payments of the purchase price for the premises in controversy, a deed of trust should be given, and that the Iron Springs Company should certify to the trustee a report of the sale of the premises which he desired to purchase. In short, it appears from his own testimony, that he familiarized himself with the terms and conditions of the deed of trust, upon which the Iron Springs Company might sell free and clear of the deed of trust, and that he was fully aware that the bond for a deed did not comply with any of its conditions in this respect.

The testimony of plaintiff Heistand on the subject under consideration is to the effect that prior to the purchase, the only person with whom he conferred regarding the title to the property was the president of the Iron Springs Company, from whom he learned that the company had the right to sell the premises in dispute, but he does not claim that he made any inquiry for the purpose of acquainting himself with the terms and conditions upon which title, free and clear of the deed of trust, could be acquired. He also states that he had a conversation with Frost, who advised him to buy because the price agreed upon was reasonable,

and that he would make arrangements to let him have the money to make the contemplated improvements. Neither of the plaintiffs claim to have had any conversation with Peltz, which is material to consider. It will be observed that neither of them claims that Frost advised them that the contract which they entered into with the Iron Springs Company could be enforced, as against the trustee or bondholders, so as to release the property purchased from the lien of the deed of trust, or that such contract would be recognized by the bondholders independent of the deed of trust.

Frost testifies that in November, 1895, plaintiff Weir came to him and talked about buying the premises in dispute, and asked him regarding its value. Something was said about title, and Weir asked him what he meant, to which he replied that it would be necessary to obtain a release of the deed of trust, and that he also advised him what he understood was the process by which this release could be obtained. That afterwards, one or other of the plaintiffs informed him that they had concluded to take their chances by taking a bond for a deed, and later told him they thought the mortgagor would discharge the taxes so they could get a release. Why the deed executed by the Iron Springs Company was deposited with Frost in escrow is not free from dispute, but it does not appear that this deposit was made pursuant to any understanding or arrangement that the bondholders should recognize the agreement entered into between the Iron Springs Company and the plaintiffs, as evidenced by the bond for a deed.

The evidence of defendant Peltz, so far as it is necessary to notice, is, in effect, that in September or October, 1895, he had a conversation with plaintiffs at Colorado Springs, at which Weir spoke of obtaining a deed of the property, and a release of the deed of trust, in reply to which he told him that he could not get a release at that time, because the mortgagor was in default, and it would be necessary for it to pay up all arrears before the trust company would execute a release ; that the interest maturing on the first of October

would also have to be taken care of; that he said to Mr. Weir that if he made improvements without the defaults being arranged, they would do so at their peril, to which Weir replied (employing the language of the witness), "They were in a bad box." Neither of plaintiffs controvert the above statements of the defendants Frost and Peltz. This evidence certainly does not tend to establish the claim that plaintiffs were led to believe that their contract with the Iron Springs Company would be recognized as one binding upon the bondholders, independent of the deed of trust. Neither does it tend to support their claim, that the acts of either Frost or Peltz misled them, to their injury. On the contrary it clearly appears that they understood fully how the purchase must be made from the Iron Springs Company, whereby the release of the deed of trust could be obtained, but for some unexplained reason, chose to take their chances by entering into the contract which they did.

For this reason, as we have already noticed, it is unnecessary to determine what authority Peltz and Frost had relative to entering into a contract on behalf of the bondholders for the purchase of the premises by plaintiffs, because neither of them attempted to enter into any such contract as the representative of the beneficiaries in the deed of trust. Neither is it necessary to consider the question of estoppel, argued by counsel for plaintiffs, as from the facts clearly established by the evidence, they are not in a position to invoke relief upon this ground. We fully recognize that plaintiffs will suffer a considerable loss by reason of the foreclosure of the deed of trust, and their failure to obtain a release upon the premises which they purchased, for which a part of the purchase money has been paid, and a considerable sum expended in the way of improvements. The position, however, in which they are placed is the result of their own negligence and failure to exercise ordinary business prudence. The premises they purchased were incumbered, of which they were fully aware; they knew what steps had to be taken in order to secure title, free of this incumbrance; no one has misled them,

and the courts are powerless to extricate them from a difficulty for which they, alone, are responsible.

The judgment of the district court must be affirmed, and it is so ordered.

*Affirmed.*