## WEAVER et al. v. WEAVER.

### No. 14527.

Court of Civil Appeals of Texas.
Fort Worth.

May 14, 1943.

Rehearing Denied June 11, 1943.

Simpson & Harrison, of Fort Worth, for appellants.

Chester B. Collins, of Fort Worth, for appellee.

McDONALD, Chief Justice.

This is a suit upon a promissory note. In a trial before the court, without a jury, the plaintiff, the payee named in the note, recovered judgment against the three signers of the note. The signers of the note have appealed, urging two defenses to the note. The first is that the suit is barred by the four-year statute of limitations, Art. 5527, R. C. S. The other defense is that the note is not yet due, if the signers be mistaken in saying that the note is barred.

In order to present clearly the issues involved, it is necessary to detail the events leading up to and the circumstances surrounding the execution of the note in suit. The plaintiff is James Marion Weaver, who is a son of the defendant Juel E. Weaver, the latter being a brother of the defendants J. Roderick Weaver and Mrs. Katie Weaver Rose. The defendants are children of F. M. Weaver and Dorothy Weaver, both now deceased; and plaintiff is a grandson of F. M. Weaver and Dorothy Weaver. . Mr. and Mrs. Weaver, last mentioned, were wealthy residents of Fort Worth. Mrs. Dorothy Weaver died in 1918, leaving an estate worth several hundred thousand dollars. Her will, which was probated in Tarrant County, provided that the sum of $5,000 should be paid to her grandson James Marion Weaver, the plaintiff in the present suit, when he should reach the age of twenty-one years. For some reason not disclosed by the record before us, this sum was not paid to plaintiff from his grandmother's estate. The three defendants were also beneficiaries under their mother's will.

Thereafter the three defendants executed and delivered to plaintiff an instrument in writing which, in its entirety, reads as follows:

"$5000.00 Midlothian, Texas. Feb. 4, 1935

"Ninety days after date without grace, I, we, or either of us promise to pay to the order of James Marion Weaver at Bank below—The First National Bank, in Midlothian, Five Thousand Dollars and no/100 Dollars with interest at the rate of 6 (six) per cent, per annum from maturity until paid for value received. And further promise, if this note is placed in the hands of an attorney for collection, to pay ten per cent additional on the full amount due for attorney's fees, all parties to this note severally waive presentment for payment, notice of non-payment, protest and notice thereof, and diligence in bringing suit against any party hereto.

"Payable at the office of the First National Bank, Midlothian, Texas.

"The face value of this note is valid only with attached contract otherwise it is null & void.

> Signed) "J. Roderick Weaver.
> Signed) "Juel E. Weaver
> Signed) "Katie Weaver Rose"

"This memo contract attached to note is given by the undersigned in lieu of an obligation, deposed by our mother through a special gift to her grandson James Marion Weaver, in her will, of which James A. Weaver (deceased) was the executor. The note attached is to be paid ninety—(90) days after probation and out of the Estate of F. M. Weaver, said note

to be paid by any of the heirs surviving and participating in said Estate.

Signed) "J. Roderick Weaver
Signed) "Juel E. Weaver
Signed) "Katie Weaver Rose."

It is stipulated by the parties that there was a payment of $1,776.50 made on this obligation on September 1st, 1935.

F. M. Weaver, the father of the defendants and the grandfather of the plaintiff, died on October 28, 1936. He left a written will and a codicil thereto, which were admitted to probate in Tarrant County on July 8, 1937. He left an estate valued in the inventory and appraisement filed in the probate proceedings at more than $200,000. The defendants have received more than $5,000 from their father's estate.

The present suit was filed on July 3, ·1941, which was more than four years and ninety days after the date of the note in suit, but which was less than four years after July 8, 1937, the date when F. M. Weaver's will was admitted to probate. The contention of plaintiff is that the note, by reason of the so-called "memo contract" which was attached to the note, was not due until ninety days after the probate of F. M. Weaver's will; while the contention of the defendants is, to quote from their first point of error, that "the language of the 'memo contract' relied on is so vague and indefinite and uncertain in its meaning as to fail to express any agreement as to the date of maturity." Defendants contend, therefore, that the note was due on ninety days after February 4, 1935, which was more than four years before the suit was filed. Hence we must determine what was the due date of the note.

 The rules of construction governing contracts are applicable to bills and notes. 10 C.J.S., Bills and Notes, § 42, p. 478. A bill or note must be construed as a whole so as to give effect to every part of it. 10 C.J.S., Bills and Notes, § 43, p. 479. Memoranda on a bill or note, placed thereon contemporaneously with its execution, under such circumstances as to indicate an intention of the parties that it become a part of the contract, constitute a substantive part thereof. 10 C.J.S., Bills and Notes, § 44, p. 480.

 To be enforceable, a contract must be reasonably definite and certain in its terms. 10 Tex.Jur. 175. Absolute and positive certainty is not required; reasonable certainty is sufficient. That is certain which can be made certain. As a rule extrinsic evidence is admissible to remove the uncertainty by showing the intention of the parties. 10 Tex.Jur. 176, 177. The purpose of rules of construction is to enable the court to ascertain from the language used in a contract the manner and extent to which the parties intended to be bound. 10 Tex.Jur. 271. The cardinal rule in construing a contract is to ascertain and give effect to the intention of the parties, as expressed in the language which they have used, provided that such intention is not in conflict with the rules of law; and this is the general purpose of all rules for the construction of contracts. 10 Tex.Jur. 272. The general and leading purpose should control minor inharmonious provisions. If two purposes or intents may be inferred from the language used and the main purpose clearly appears, such main purpose will control. 10 Tex.Jur. 273. The intention of the parties to a contract is to be gathered from a consideration of the entire instrument, taken by its four corners. In other words, the contract must be read, considered and construed as a whole, and all of its provisions must be taken into consideration and construed together in order to ascertain its meaning and effect. 10 Tex.Jur. 282. It is a settled rule that language used in expressing their agreement will be construed in the light of the facts and circumstances surrounding the parties when the contract was made, the terms of the contract being ambiguous or doubtful. 10 Tex.Jur. 290. In construing a contract the court may put itself in the place of the parties who made it at the time when it was made, and may consider their situation and the subject matter of the contract, with which it will be conclusively presumed that the parties were familiar. Provisions in a contract which are apparently conflicting are to be reconciled and harmonized, if possible, by any reasonable interpretation, and the contract as a whole given effect. To determine whether this can be done the court will look to the entire instrument, in the light of the attending circumstances. In case of a variance between clauses, the one which contributes most essentially to the contract is entitled to the most consideration. 10 Tex.Jur. 311. The above statements are quotations from the texts cited, and are amply supported by the decisions of the courts.

In the light of the rules announced, let us examine the instrument here involved, and let us consider the surrounding facts and circumstances. The plaintiff had been deprived, through some means, of the legacy contained in his grandmother's will. The defendants, who were among the residuary legatees, gave the plaintiff a promissory note, in the same amount of the legacy, which contains a clause referring to the attached contract. The attached contract clearly reveals that the note was given for the purpose of bringing about a payment to the plaintiff of the amount of money which should have come to him from the estate of his grandmother. It further clearly reveals an intention of the parties that the $5,000 should be paid out of the estate of F. M. Weaver, or at least by the heirs surviving and participating in F. M. Weaver's estate. It is likewise clearly indicated that the parties intended that the money should be paid after the death of F. M. Weaver and after probate proceedings were had upon his estate. The dominant purpose indicated is that the plaintiff should receive the amount of his legacy, but that he should receive the amount of it from the estate of his grandfather, after his grandfather's death. The contract is unskillfully drawn. But it is too clear for argument that the parties had a definite program in mind about the payment of the $5,000 to the plaintiff. They undertook to reduce their intentions to writing. It is our duty to ascertain their intentions, if possible, and to give effect to them. We should not be eager to deprive parties of rights under a written contract because of the lack of skill displayed in its draftsmanship. We have no difficulty in determining that it was the intention of the parties to this contract that the plaintiff should be paid the sum of $5,000 ninety days after the probate of F. M. Weaver's will. We hold that the suit is not barred by limitation.

The defendants next contend, in the event they are mistaken in their view that the note was due ninety days after its date, that it is not yet due because of the following. F. M. Weaver's will, and a codicil thereto, were admitted to probate on July 8, 1937. Prior to the institution of the present suit Frank M. Weaver, Jr., filed in the probate court of Tarrant County a petition seeking to set aside the probate of the codicil to F. M. Weaver's will. Such proceeding is still pending in the probate court. The defendants contend that the matter of the probate of F. M. Weaver's will is therefore still pending and undetermined, and that there has not yet been such a probate of Weaver's will as would render the note due under the terms of the "memo contract".

We overrule the contention for two reasons. First, the plaintiff served upon the defendants a request for admissions such as is permitted by Rule 169, Texas Rules of Civil Procedure. Among the admissions requested are those set out in paragraphs 6 and 7:

"6. That on July 8, 1937, a will of F. M. Weaver, dated January 11, 1928, and a codicil thereto, dated January 6, 1930, were admitted to probate in the County Court of Tarrant County, Texas, by probate order No. 12972.

"7. That said probate proceeding of July 8, 1937, was the first probate proceeding of any character had upon the estate of F. M. Weaver."

The defendants did not answer such request for admissions of fact. Plaintiff objected to the admission of any evidence tending to disprove the facts requested to be admitted. Defendants' failure to answer the request for admissions of fact compels us to treat such facts as admitted by defendants, and to hold that any evidence to the contrary is of no effect. Masten v. Masten, Tex.Civ.App., 165 S.W. 2d 225, writ of error refused.

In the second place, F. M. Weaver died intestate as to approximately one-fourth of his estate, because one of his sons, James A. Weaver, to whom was left one-fourth of the estate, predeceased the testator. The defendants took their share of this portion of their father's estate under the laws of descent and distribution. Having already received this share, which amounted to more than $5,000 we think that they are now in no position to claim that the note is not yet due.

The judgment of the trial court is affirmed.