842 P.2d 1328

**John Eli ABOUD, as a trustee of Aboud & Aboud, P.C. Money Purchase and Profit Sharing Plans, Plaintiff/Counter–Defendant/Cross–Appellant,**

v.

**Evo David DECONCINI; 4–D Properties, a general partnership, Defendants/Appellants/Cross–Appellees.**

No. 2 CA–CV 92–0012.

Court of Appeals of Arizona, Division 2, Department A.

June 23, 1992.

Petition and Cross–Petition for Review Denied Jan. 20, 1993.*

* Feldman, C.J., and Zlaket, J., of the Supreme Court, recused themselves and did not participate in the determination of this matter.

Aboud & Aboud, P.C. by Michael J. Aboud, Tucson, for plaintiff/counter-defendant/cross-appellant.

DeConcini McDonald Brammer Yetwin & Lacy, P.C. by Karen J. Nygaard, Tucson, for defendants/appellants/cross-appellees.

## OPINION

HOWARD, Judge.

The plaintiff John Eli Aboud filed a complaint in superior court for monies due under a promissory note. The defendants Evo David DeConcini and 4–D Properties (collectively referred to as the partnership) filed a counterclaim for declaratory judgment, quiet title and other relief. Subsequently, both parties filed motions for summary judgment. The trial court granted each party's motion in part and denied each party's motion in part. This appeal and cross-appeal followed.

### I

On October 7, 1985, defendant DeConcini bought 120 acres of land from Commercial Brokers, Inc. by paying approximately 25 percent down, assuming a note and deed of trust in the amount of $640,000 executed by Commercial Brokers in favor of Stephen Sturman and Frances Greenebaum, and executing a second-position note for $50,000 ("the second note") and a deed of trust.[1] The second note is entitled "Non–Recourse Note Secured by Deed of Trust." The second note, like the first note, provides for annual interest payments only until October 8, 1990, at which time the entire balance of principal and interest becomes im-

mediately due and payable. It also gives the holder the right to accelerate the payment of the entire amount of unpaid principal and interest should there be a default in the payment of any of the interest payments. This note further contains as an attachment the following exhibit A, which is also a part of the second deed of trust:

> Provided Maker/Trustor is not in default in any of the obligations or responsibilities of the NOTE, Maker/Trustor shall be entitled to obtain releases of land from the lien of the Deed of Trust in the following way:
>
> *In thirty (30) acre minimum parcels* for principal reductions of TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00) per thirty (30) acre parcel in order as shown on the attached plat labeled Exhibit "C".
>
> All releases shall be in a manner so as not to landlock any unreleased portion of the property.
>
> *The releases provided for herein may only be obtained when based upon a legal description provided and certified by a registered surveyor and accompanied by a plat upon which said surveyor has indicated the parcel or parcels to be released and their relationship to Exhibit "C".*
>
> The down payment shall not apply to release privileges. All principal payments pursuant to the NOTE will apply to release privileges and all payments made to secure releases shall apply to the next principal payment due. All costs of recording partial releases shall be borne by Maker/Trustor.

(Emphasis added.) DeConcini later transferred the properties to 4–D, a family partnership, which assumed DeConcini's obligations under the two notes and deeds of trust.

On August 17, 1989, unbeknownst to the partnership, Aboud purchased the second note. On September 27, 1990, four days before the balances were due on both of the notes, the partnership paid the trustee $25,000 plus interest to obtain a release of two of the 30–acre parcels. In conjunction

---

1. Ticor is the trustee of both deeds of trust.

with the request and payment, it provided the trustee with a legal description and plat of the two parcels dated September 25, 1990. However, the legal description and plat disclosed that neither parcel was 30 acres; parcel one was 29.9142 acres and parcel two was 29.9897 acres.

The trustee telephoned Aboud and told him that the partnership was requesting the release of the parcels. A short time later on the same day Steven Thu, director of development for 4–D, telephoned Aboud and advised him that the partnership was not going to make the full payment due Monday, October 8, 1990, but that it was going to default on both of the notes, and that it would pay Aboud $25,000 plus interest thereon or a total of $27,500 to obtain a release of the two parcels.

On Friday, October 5, 1990, Aboud advised the trustee that he would not give the requested releases. On Tuesday morning, October 8, 1990, Aboud received Thu's letter dated October 8, 1990, which had attached a revised legal description showing both parcels now to be 30 acres.

The partnership failed to make the full payment of $55,000 on the second note and failed to pay the balance of over $250,000 owed on the first note, both of which were due October 8, 1990. The partnership still contended that Aboud was obligated to release the two 30–acre parcels, which Aboud refused to do, resulting in this lawsuit. Aboud filed suit seeking all amounts owed by the partnership. The partnership counterclaimed for a declaratory judgment and quiet title. The trial court concluded that the partnership was not entitled to releases and also ruled that DeConcini was not personally liable on the second note. DeConcini and 4–D contend the trial court erred because (1) the doctrine of anticipatory breach does not apply to a unilateral contract; (2) their agreement was divisible; and (3) they were not in default when the releases were requested. Aboud contends the trial court erred in not finding DeConcini personally liable on the note. We affirm.

## II

■ Because the theory of divisibility was not raised in the trial court, we will not consider it on appeal to secure reversal. *Contempo Construction Company v. Mountain States Telephone & Telegraph Company*, 153 Ariz. 279, 736 P.2d 13 (App. 1987).

## III

■ The doctrine of anticipatory repudiation is recognized in Arizona. As stated in *United California Bank v. Prudential Insurance Company, etc.*, 140 Ariz. 238, 277, 681 P.2d 390, 429 (App.1983):

Generally, a contract cannot be breached until the date the duty of performance arrives. However, if one party unequivocally indicates he will not perform when the date arrives, an anticipatory breach is committed.

■ The evidence here is uncontradicted. On October 4, 1990, the partnership told Aboud it was not going to make the October 8 payments on either note. But this statement was made after it had tendered the full amount necessary to secure the release of the two parcels. According to the terms of the note, the partnership was entitled to the release of the parcels if it was not in default and if it had complied with all the conditions set forth therein. The record shows that the partnership had not complied with all conditions because the survey showed the lots were less than the 30 acres each required by the note. The partnership was not entitled to a release of the lots until October 9, when a corrected survey was presented and after the anticipatory breach of October 4. Therefore, when the corrected survey was presented, the partnership was in default and was not entitled to a release of the two parcels.

■ The partnership contends it only had to substantially comply with the release requirement and it did so on October 4, 1990, thus entitling it to a release of the two parcels. The partnership has not provided us with any authority for this argument, we know of none, and we reject it.

The right to a partial release depends on strict compliance with its terms. *Weir v. Iron Springs Co.*, 27 Colo. 385, 61 P. 619 (1900); 59 C.J.S. Mortgages § 479 at 757; Annot. 41 A.L.R.3d 7 at 117–18. The reason for the requirement of strict compliance is that one has a right to specify the terms under which mortgage rights will be released and the courts have no right to declare that a person must accept a different performance than what was agreed upon; the court may not require the mortgagee to justify a refusal to accept less than full performance.

### IV

■ The partnership also argues that the doctrine of anticipatory repudiation has no application here because a promissory note is a unilateral contract. While we agree that the doctrine does not apply to a unilateral contract, *see Rosenfeld v. City Paper Co.*, 527 So.2d 704 (Ala.1988), that exception does not apply here. Under the exception, repudiation of a duty does not operate as a breach if it occurs after the repudiating party has received all of the agreed exchange for that duty. The injured party must then await the time for performance to sue for damages. Farnsworth on Contracts, Vol. II, 1990, § 8.20. Here, appellants had not received all of the agreed exchange, to-wit, the parcels of land for which they bargained.

### V

■ In its cross-appeal Aboud argues that the court erred in failing to find DeConcini personally liable on the note. Aboud argues that the labeling of the note as "non-recourse" had no effect on DeConcini's liability since the body of the note contains no such language. Aboud also points out that the note contains a promise to pay attorneys' fees in the event of his default, which is inconsistent with DeConcini's theory of no personal liability.

A.R.S. § 47–3413(A) states: "The maker ... engages that he will pay the instrument *according to its tenor* at the time of his engagement ..." (Emphasis added.) In other words, the maker promises to pay according to the true intent and meaning of the instrument.

■ The note is ambiguous because its body does not limit the maker's liability and contains a provision inconsistent with non-liability on the part of the maker. Except as otherwise compelled by A.R.S. § 47–3118, promissory notes are construed like other contracts. *Weaver v. Weaver*, 171 S.W.2d 898, 900 (Tex.1943); Cf. *First National Bank of Jefferson Parish v. Kindermann*, 280 So.2d 888 (La.1973). Anything written or printed on a note prior to its issuance and relating to its subject matter must be regarded as part of the contract represented by the instrument and is to be given due weight in its construction. Cf. *U.S. v. Reed*, 31 A.2d 673 (D.C.1942).

■ In interpreting a contract the court must ascertain and give effect to the intention of the parties at the time it was made, if at all possible. *Polk v. Koerner*, 111 Ariz. 493, 533 P.2d 660 (1975). If the contract is unambiguous, the intent of the parties is determined by the contents of the contract alone. *Nemec v. Rollo*, 114 Ariz. 589, 562 P.2d 1087 (App.1987). However, if the contract is ambiguous, surrounding circumstances may be considered in determining its exact meaning and the contractual obligation created. *Henderson v. Jacobs*, 73 Ariz. 195, 239 P.2d 1082 (1952).

The record shows that at the same time that DeConcini executed the $50,000 note, Commercial Brokers, Inc. made a note in the sum of $640,000 payable to Sturman and Greenebaum which DeConcini assumed. This note had a typed provision which stated that "[t]here shall be no personal liability to Maker, and no deficiency judgment in the event of foreclosure and/or forfeiture. Holder shall look solely to the property for security." Curiously, in spite of the clear foregoing provision, the printed provision relating to attorneys' fees was left in the instrument, as was the case with the $50,000 DeConcini note to Commercial Brokers.

The record also shows that two months prior to the purchase of the land by DeConcini, Commercial Brokers, as a seller, en-

**320**

tered into an agreement with another brokerage company for the purchase of the property. Commercial Brokers agreed in this earlier agreement to accept a $50,000 non-recourse promissory note and a deed of trust to be secured against the property.

It seems clear, therefore, after looking at the surrounding circumstances in conjunction with the note itself, that the parties to the $50,000 note intended that it be non-recourse. Therefore, the trial court did not err in denying a personal judgment against DeConcini.

Aboud has asked for and is entitled to attorneys' fees incurred in the defense of the appeal which will be awarded upon compliance with Ariz.R.Civ.App.P. 21(c), 17B A.R.S.

Affirmed.

LIVERMORE, C.J., and LACAGNINA, P.J., concur.