NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL WAYNE SAXTON, *Plaintiff/Appellant*,

*v.*

MAUREEN A. BERKNER, *Defendant/Appellee*.

No. 1 CA-CV 18-0275
FILED 10-1-2019

Appeal from the Superior Court in Maricopa County
No. CV2017-053099
The Honorable Aimee L. Anderson, Judge (Retired)

**AFFIRMED**

COUNSEL

Schern Richardson Finter, PLC, Mesa
By Aaron M. Finter, Yusra Batool Bokhari
*Counsel for Plaintiff/Appellant*

Margrave Celmins, P.C., Scottsdale
By Michael L. Kitchen
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer B. Campbell joined.

---

**C R U Z**, Judge:

¶1          Michael Wayne Saxton appeals from the superior court's grant of summary judgment in favor of Maureen A. Berkner and the court's denial of his motion for reconsideration. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          As trustee of the Maureen A. Berkner Living Trust Agreement, Maureen A. Berkner owns a ten-acre property located in New River. Berkner split the property in half and decided to sell the northern half of the property with a residence. On March 7, 2017, Berkner and Saxton executed a purchase contract ("the Contract") for the sale of the property for $416,000 with a closing date of March 31, 2017. Saxton paid $5,000 earnest money. The terms of the Contract provided that the survey dividing the property into northern and southern halves, and a well sharing agreement to divide the usage of the well between the parcels, would be conducted and provided to Saxton during the inspection period.

¶3          Berkner provided the survey and well sharing agreement to Saxton. The survey divided the parent property into two parcels, and it provided the northern parcel, which Saxton contracted to purchase, an easement for ingress and egress. The well sharing agreement provided that each parcel would receive a fifty-percent interest in the well. Saxton disapproved of both the survey and the well sharing agreement, and demanded that the parcel be split differently to include additional portions of the southern parcel and to change the well sharing agreement to provide additional well capacity.

¶4          Berkner declined to make the requested changes, and Saxton's realtor told Saxton he could cancel the contract and get his earnest money back. Saxton instead demanded mediation and threatened litigation. On March 27, 2017, Saxton notified Berkner that he would not close on March 31, 2017, the contracted closing date. In reply, on March 30,

2017, Berkner sent Saxton a "cure period notice." After Saxton failed to deposit the purchase price in escrow on March 31, 2017, Berkner canceled the purchase contract.

¶5 Saxton filed suit for breach of contract and specific performance. Saxton argued that the parcels were not divided in accordance with the parties' intent, asking the superior court to enforce alternative contract terms and have the survey "re-drawn." Saxton also placed a *lis pendens* on the entire property. Berkner filed an answer and a counterclaim for wrongful recording of the *lis pendens*. After Berkner filed a motion for summary judgment, the superior court heard oral argument and granted summary judgment in Berkner's favor as to both issues. Saxton filed a motion for reconsideration, which the court denied. Saxton timely appealed and now argues that he was at all times willing to move forward with the purchase of the property pursuant to the Contract, well sharing agreement, and survey.

¶6 We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-120.21(A)(1).

## DISCUSSION

¶7 Summary judgment may be granted when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). In reviewing a motion for summary judgment, we determine *de novo* whether there are any genuine issues of material fact and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4 (App. 2000). We view the facts and inferences to be drawn from those facts in the light most favorable to Saxton, the party against whom judgment was entered. *See AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 293 (App. 1993). We review the denial of a motion for reconsideration for an abuse of discretion. *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 16 (App. 2009).

¶8 Saxton argues that the superior court erred because there is insufficient evidence showing that (1) Saxton breached the Contract, (2) Berkner terminated the Contract according to its terms, and (3) Berkner provided Saxton with required disclosures. Saxton contends the Contract has not been canceled and that he is still entitled to purchase the property. We disagree.

¶9 Issues pertaining to contract interpretation present questions of law, which we review *de novo*. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). We interpret a contract to make it effective and reasonable, giving

its words their ordinary meaning and construing its provisions from the language of the parties in view of all the circumstances. *Cty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 599, ¶ 16 (App. 2010). We give preference to an interpretation that gives "a reasonable meaning to the manifested intent of the parties rather than an interpretation that would render the contract unreasonable." *Bryceland v. Northey*, 160 Ariz. 213, 216 (App. 1989). An unambiguous contract is "interpreted according to its terms." *Isaak v. Mass. Indem. Life Ins. Co.*, 127 Ariz. 581, 584 (1981). A contract is not ambiguous simply because the parties disagree as to its meaning. *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 175 Ariz. 273, 277 (App. 1993). If the parties' intent is clear from the contract language and the surrounding circumstances, then the contract is not ambiguous. *Harris v. Harris*, 195 Ariz. 559, 562, ¶ 15 (App. 1999).

**¶10** Under the "Additional Terms and Conditions" of the Contract, Berkner was required to provide a survey and shared well agreement during the inspection period. Saxton could then approve or disapprove them. If Saxton disapproved of the survey or the well sharing agreement, Section 6(j) of the Contract provided that Saxton "shall deliver to [Berkner] a signed notice of the items disapproved and state in the notice that [Saxton] elects to either (1) Immediately cancel this Contract, in which case . . . the Earnest Money shall be released to [Saxton]. . . . OR (2) Provide [Berkner] an opportunity to correct the items disapproved." Further, Section 6(j)(2)(c) provides:

> If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel this Contract within five (5) days after delivery of Seller's response or after expiration of the time for Seller's response, whichever occurs first, and the Earnest Money shall be released to Buyer. If Buyer does not cancel this Contract within the five (5) days as provided, Buyer shall close escrow without correction of those items that Seller has not agreed in writing to correct.

**¶11** Forcing Berkner to offer a modified version of the survey and shared well agreement was not an option available to Saxton under the Contract. Instead, Section 6(j) of the Contract clearly provides that Saxton's choice in the event of a disagreement was to either cancel the contract or go forward under Berkner's proposed terms. Saxton's time to act expired on March 31, 2017, and it is undisputed that instead of canceling the contract or closing escrow, Saxton notified Berkner that Saxton would seek mediation. Moreover, Saxton later failed to satisfy the Contract's requirement to either cancel the Contract or to tender the remaining

purchase price and close escrow. Section 8(e) of the Contract included a "time is of the essence" clause. Saxton failed to timely act, materially breached the Contract, and therefore Berkner canceled the sale. *See Mining Inv. Grp. v. Roberts*, 217 Ariz. 635, 639-40, ¶¶ 17-18 (App. 2008) (failure to close on real estate transaction when "time is of the essence" is a material breach).

¶12          Saxton further argues that Berkner failed to comply with the Contract's procedure for cancellation in the event of a breach. Under Section 7(a) of the Contract:

> A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall become a breach of Contract.

¶13          Saxton argues that Berkner's alleged "notice to cure" was sent on March 30, 2017, but in order to be effective, the notice could not be sent until April 1, 2017, three days after the closing date passed. In other words, Saxton argues that it was not possible for him to be in breach on March 30, 2017, prior to closing, and so a timely notice to cure was never sent. While a contract generally cannot be breached until the date of the performance, if one party unequivocally indicates he will not perform when the date arrives, he has committed an anticipatory breach. *Aboud v. DeConcini*, 173 Ariz. 315, 318 (App. 1992). On March 27, 2017, Saxton unambiguously and emphatically communicated his refusal to perform under the contract and close on March 31, 2017, unless Berkner agreed to a different version of the survey and well sharing agreement. Saxton's communication put Berkner on notice of Saxton's intention not to exercise either option under Section 6(j)(2)(c) of the Contract. Saxton's refusal to close according to the terms of the well sharing agreement and survey constituted an anticipatory breach, and Berkner was not required to wait until after the closing date to send her notice to cure. *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 278 (App. 1983) (finding that "one party's 'insistence upon terms which are not contained in a contract constitutes an anticipatory repudiation thereof'") (citation omitted).

¶14          Saxton also claims that Berkner's correspondence "falls short" of the content requirements for a notice to cure, but he previously recognized in email exchanges that the correspondence at issue was a "cure

period notice." Moreover, Saxton's argument fails to explain why the notice was substantively deficient.

¶15 Finally, Saxton argues that Berkner breached the contract by failing to provide additional required disclosures. Specifically, Saxton alleges that Berkner failed to disclose: (i) the Affidavit of Disclosure; (ii) the Domestic Water Well/Water Use Addendum to Seller Property Disclosure Statement ("DWWA SPDS"); (iii) an inspection report of the septic system; (iv) the Seller Property Disclosure Statement ("SPDS"); and (v) title insurance. However, the disclosures Saxton references were either timely disclosed or were not required until closing, and here, Saxton's rejection of Berkner's version of the survey and well agreement caused the contract to be canceled and relieved Berkner of the duty to continue to perform in accordance therewith. A party's failure to perform under a contract excuses the other party's obligation to perform. *Ceizyk v. Goar Serv. & Supply, Inc.*, 21 Ariz. App. 119, 122 (1973). As a result of Saxton's breach of the Contract, Berkner properly canceled the same and was no longer required to make further disclosures.

**CONCLUSION**

¶16 For the foregoing reasons, we affirm the superior court's grant of summary judgment in favor of Berkner and the denial of Saxton's motion for reconsideration. Both parties request their attorneys' fees pursuant to A.R.S. § 12-341.01 and Section 7(e) of the purchase contract, and costs. In the exercise of our discretion, we grant Berkner her attorneys' fees. Upon compliance with Arizona Rule of Civil Appellate Procedure 21, Berkner may recover her costs on appeal.

