LOTTINGER, Judge.
This is a suit for deficiency judgment filed by Associates Discount Corporation against Lloyd Solar. A third party proceeding was filed by the defendant against Lousteau Ford, Inc., in the same amount that he might be cast in judgment in the main demand, plus attorney fees. Following trial on the merits the Lower Court rendered judgment in favor of the petitioner, Associates Discount Corporation and against the defendant, Lloyd Solar, in the sum of $978.72, plus interest at the rate of eight percent per annum from June 20, 1963, until paid, together with the sum of $419.35 as attorney fees. A similar judgment was rendered in favor of defendant and against the third party defendant Lousteau Ford, Inc., in the same amounts. The reconven-tional demand of the third party defendant ágainst defendant was dismissed. From said judgments a suspensive appeal was taken by Lousteau Ford, Inc. The defendant has answered the appeal seeking a reversal of the judgment against him below, and, in the alternative, asking for attorney fees in his third party demand against Lousteau Ford, Inc.
The record in this matter discloses that on June 24, 1963, the defendant called Lousteau Ford from his home advising them that he was interested in purchasing a new 1963 Ford automobile. During the course of the telephone conversation, the defendant informed Lousteau Ford that he wished to trade in his 1961 Ford Galaxie upon which there was an existing chattel mortgage in the balance of sixteen monthly payments of $91.85 each. The defendant was informed that a deal could be arranged on the basis of a trade-in, whereupon he and his wife went to Lousteau Ford where they determined that they would like to purchase a 1963 model Ford Galaxie and trade in their 1961 Ford. While there, Mr. Lousteau figured the unpaid balance still owing on the 1961 Ford automobile to be approximately $1,-400.00, and using this basis on the trade-in, he arrived at the cost of the new car to defendant would be 36 monthly payments of $102.00 per month.
Having secured this offer, the defendant told the salesman at Lousteau Ford that he was going to Baton Rouge to compare prices. The salesman requested that Mr. Solar would return to Lousteau Ford, Inc., to give them an opportunity to beat any offer he might receive from any Baton Rouge automobile dealership.
The defendant then went to Richards Ford, Inc., in Baton Rouge to compare the prices where he advised the salesman of his intentions and informed him that his 1961 Ford had been financed at Associates Discount Corporation. Both Mr. Solar and his wife testified that at that time they advised the salesman of Richards Ford that they had two accounts at Associates Discount Corporation, one on the 1961 Ford automobile and another on a pick-up truck, and that they were currently paying on both accounts. They testified that the salesman then phoned Associates Discount Corporation and asked for a pay-off figure on the automobile. After receiving the information, the salesman made an offer to Mr. and Mrs. Solar on a 1963 Galaxie similar to the one offered by Lousteau Ford, except that the monthly note would be only $100.00 per month for a period of 36 months.
At this point the Solars went back to Lousteau Ford, as promised, whereupon Mr. *129 Solar advised Lousteau Ford’s salesman of the offer made by Richards Ford. Mr. Solar then added that he thought Richards Ford had been able to beat Lousteau’s offer because they were using $1100.00 or $1150.-00 as a pay-off figure on the 1961 Ford automobile.
Mr. Lousteau then proceeded to review his proposal and to adjust his price. Lous-teau then made another offer to Mr. Solar on the purchase of the 1963 Galaxie for 36 monthly payments of $98.58 per month. This offer included a cash payment of $95-.-37, assertedly for extras. This offer was accepted by Mr. Solar and the deal was consummated by the signing of the papers transferring the 1963 Galaxie to Mr. Solar and the 1961 Ford to Lousteau Ford, Inc,
The agreement between Lousteau and Solar called for the credit portion of the sale to be financed by Commercial Securities Company, which was done. Included in the amount Lousteau received from Commercial Securities was $1149.00, which was supposed to be used by Lousteau Ford to pay off the mortgage held by Associates Discount Corporation on the 1961 automobile.
Shortly after he had taken possession of the new automobile, Mr. Solar was called by Mr. Lousteau and advised that he had made a mistake in calculating the price of the new automobile in that he had used an incorrect pay-off figure on the 1961 Ford, and that Mr. Solar would have to pay an additional amount of $289.27 over and above the amount previously agreed upon. Confronted by this situation, Mr. Solar advised Lousteau that he was unable to pay the additional amount and offered to set aside the entire transaction by returning the new automobile and regaining possession of his 1961 Ford. This offer was repeated by Mr. Solar on three occasions, however, on each occasion Mr. Lousteau declined, first claiming that the 1963 Galaxie had already been registered to Solar, and later claiming that the Galaxie was then a used car. The registration of the 1963 Galaxie to Mr. Solar, however, did not take place until some period of time subsequent to these conversations.
The record further discloses that although Lousteau Ford had received $1149.-00 from Commercial Securities to pay off Mr. Solar’s indebtedness to Associates Discount Corporation, that money was never turned over to Associates Discount Corporation and remained in the possession of Mr. Lousteau who claimed that he was justified in not paying Associates Discount Corporation because of the deficiency of $289.27.
As no further payments were made to Associates Discount Corporation, executory proceedings were filed upon the 1961 Ford automobile, resulting in a Sheriff’s sale thereof. The sale was with appraisal and resulted in a net of $655.11 being applied against the accelerated balance due on the note secured by the chattel mortgage on the automobile.
The Sheriff’s sale was followed by a petition in the same proceeding for a deficiency judgment against defendant for the balance due of $978.72 plus interest at the rate of eight percent per annum from June 20, 1963, until paid, together with $419.35 as attorney fees. Judgment was rendered accordingly in favor of the petitioner and against the defendant, and in favor of defendant on his third party petition against the third party defendant The Lower Court refused to allow defendant attorney fees against the third party defendant in the sum of $2500.-00.
 In its reasons for judgment, the Lower Court said:
“Lousteau Ford, Inc. contends that it was induced to enter into the contract with Solar because of representations of Solar which amounted to fraud or error and which relieved it from any obligation under the contract.
On the trial, a representative of Associates Discount Corporation testified that as of the 24th day of June, 1963, a pay-out had been figured only on a pick-up truck *130 owned by Mr. Solar and that no pay-out had been figured prior to that time on the 1961 Galaxie account of Mr. Solar. There is no doubt in the mind of the Court that the figuring of the pay-out on the pick-up truck instead of on the automobile was the error which caused the entire misunderstanding between the three parties.
The evidence, however, does not show that Associates Discount Corporation was solely responsible for the error. Someone at Richards Ford called in for a pay-out. The record does not reveal what this person requested. The nature of this request could have been the cause of the error. For this reason, we do not find that Associates Discount Corporation was guilty of such carelessness or negligence which could serve as the basis of an equitable estoppel. Lousteau Ford, Inc. takes the position that they are exonerated from any obligation under their assumption of the chattel mortgage. It urges that it was induced to enter into the contract by the intentional deliberate misrepresentations of Lloyd Solar that the amount of the pay-off was the sum of $1149.00 instead of the actual amount of $1438.27.
It will be recalled that when the deal was being closed Solar volunteered the information that he believed Richards Ford had Lousteau beat by using a pay-out of $1149.00. The third party defendant contends that this was the deliberate misrepresentation giving rise to an error of fact.
After a careful review of the evidence, this Court reaches the conclusion that while the defendant did actually volunteer this erroneous information, the third party defendant did not act or rely upon this error of fact in making its offer.
The record reveals that Mr. Lousteau is an experienced automobile dealer. He Was informed by Solar of the amount and number of installments remaining to be paid on the chattel mortgage. Because of his experience in refinancing automobiles, he should have known that the required pay-out would be the amount of the balance less a credit for unearned interest and insurance premiums. His experience should have enabled him to estimate the amount of the pay-out to within a reasonable degree of accuracy or at least to detect a substantial error. A review of the evidence convinces the Court, that Mr. Lousteau in fixing the price relied more upon his own judgment than upon the representation of Mr. Solar of the erroneous pay-out.
It will be recalled that using the actual balance owed on the ’61 Ford, Mr. Lous-teau had established a price of $102.00 per month for 36 months or $3672.00. Solar returned and said he had been offered the same car for $100.00 a month for 36 months or $3600.00. Lousteau then offered to sell the car for $98.55 for 36 months or $3547.80. It will be observed that the difference between the first offer of $3672 and the second offer of $3547.80 amounts to the sum of $124.20, which is not the $289.27 difference between the actual amount required for the pay-out and the alleged erroneous figure of $1149.00.
The record shows Solar had an eighth grade education and the extent of his experience with automobile financing had been the purchase of several vehicles financed by chattel mortgages on the installment plan. His previous record gave him a good credit rating. The Court is convinced that Mr. Solar and his wife, in the present purchase, were concerned only with the number and the amount of the monthly installments to determine the deal. The record is singularly devoid of mention of a trade-in allowance in money which of itself is unusual. We learn from the briefs that it was $2027.40. We note also that a trade-in value was not expressed in the Buyer’s Order signed by Solar and Lousteau Ford, Inc. (Ex. Solar-1 and Lousteau-2). When they were asked what balance they owed on the ’61 Ford, Solar replied 16 installments of $91.85. These facts indicate that the *131 amount of the monthly installments and the length of the contract were the only factors considered by the Solars and not the value of the trade-in less the amount of the pay-out. We hold that furnishing an amount for the pay-out was not made with the intent to mislead or defraud since it was not considered by the Solars as a means of establishing a price.
In addition, the record showed that in the usual course of business the dealer determines the amount of the pay-out by calling the finance company. Such information is always readily available and may be obtained by a phone call. We believe that the record shows that Lousteau Ford generally followed this practice. It was not done in this case.
Article 1847, Paragraph 3 of the Revised Civil Code provides as follows :
‘A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the obj ect is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other.’
We believe that this quoted Article is particularly applicable to the present situation. Knowing the amount and number of installments remaining to be paid on the trade-in, an experienced person using ordinary attention might have detected the falsehood. In addition, the opportunity of securing the correct information on which to base the price was readily available. The usual practice in the business is to phone the finance company for the correct amount of the pay-out which information is furnished in a matter of minutes.”
While we fully concur with the reasons assigned by the Lower Court in its judgment, and find no error therein, we do feel that under the jurisprudence of this State the Lower Court did err in reaching the amount, or quantum, of the said judgment. The petition filed herein discloses that the promissory note held by petitioner was executed by defendant on August 7, 1961, in the principal sum of $3,306.60, payable in 36 monthly installments of $91.85 each, with interest at the rate of eight percent per annum from maturity until paid, plus twenty-five percent of the principal and interest as attorney fees. The petition further alleges that by default in the payment due on June 20, 1963, the note matured as of said date under the provisions of the acceleration clause contained in the note. As of the date of said maturity, the total sum of $1,672.77 hád been paid on the note, and the balance due as of said note was alleged by petitioner to be in the sum of $1,-633.83. This was a discounted note and under the terms thereof, that is, the 36 monthly payments commencing on September 20, 1961, the final payment thereon would not be due and payable until August 20, 1964.
In Consolidated Loans, Inc. v. Smith, 190 So.2d 522, writs refused, 249 La. 753, 190 So.2d 913, this Court, in citing Berger v. DeSalvo, 156 So.2d 323, and Clasen v. Excel Finance Causeway, Inc., 170 So.2d 924 said:
“The rule which has evolved is that where the holder of the note elects to accelerate maturity, he thereby remits the unearned capitalized interest, but where the maker or obligor elects to pay the indebtedness in advance of maturity no remission can be claimed. Appellant having made the election to accelerate as holder of the note, is therefore deemed to have remitted all unearned interest as contended by plaintiffs in reconvention.”
Furthermore, in Walter E. Heller & Co., v. Mall, Inc., 267 F.Supp. 343, the United States District Court for the Eastern District of the State of Louisiana, in reviewing the jurisprudence of this state with regard *132 to the acceleration by the holder of a discounted note, said:
“When a discounted note is accelerated by the holder, the entire discount or finance charge must be prorated evenly over the entire term of the note, and only that porn tion of the pro-rata discount earned as of the date of acceleration is collectable.”
The chattel mortgage held by the petitioner herein discloses that the finance charge on the note of defendant was in the sum of $432.10. This covered a period of 36 months. Therefore, dividing the said finance charge by the 36 months’ life of the note, we find that the monthly finance charge was in the sum of $12.00. As the holder of the note chose to accelerate the maturity date of same to June 20, 1963, which is a period of 15 months prior to the final payment due under the terms of the promissory note, the defendant is due a rebate, or credit of 15 months at $12.00 per month, or the sum of $180.00.
The amount as set forth as due and owing in the executory proceeding filed herein was in the sum of $1,633.83. From that sum, the Lower Court correctly deducted the sum of $655.11, being the net proceeds realized by petitioner from the executory proceeding. The Lower Court, however, erred in failing to deduct the unearned finance charges in the sum of $180.00.
The judgment below, therefore, should have been in the sum of $798.72, with interest thereon at the rate of eight percent per annum from June 20, 1963, until paid, plus twenty-five percent of the principal and interest as attorney fees.
With regard to the claim by defendant for attorney fees against the third party defendant, the law and jurisprudence of this state is clear to the effect that no attorney fees are allowable unless fraud is shown or there is a signed contract providing for attorney fees. The defendant has shown no fraud on the part of third party defendant and there was no signed contract between the parties and therefore, the Lower Court was correct in its refusal to award the defendant attorney fees against the third party defendant.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to provide for judgment in favor of petitioner and against defendant, and for judgment in favor of defendant and against the third party defendant in the sum of $798.72, plus interest thereon at the rate of eight percent per annum from June 20, 1963, until paid, plus an additional sum of twenty-five percent of the principal and interest as attorney fees, and for all costs of this proceeding. As amended the judgment of the Lower Court will be affirmed. All costs of this appeal shall be paid by the third party defendant, namely Lousteau Ford, Inc.
Judgment amended and affirmed.