276 So.2d 297 (1973)
BUDGET PLAN OF BATON ROUGE, INC.
v.
Willie J. TALBERT.
No. 52308.
Supreme Court of Louisiana.
March 26, 1973.
Rehearings Denied May 7, 1973.
*298 Nesom, Mellon, Cavanaugh & Due, Karl W. Cavanaugh, Robert H. Morrison, III, Denham Springs, for defendant-applicant.
Ralph Brewer, Baton Rouge, for plaintiff-respondent.
*299 SUMMERS, Justice.
This suit is by Budget Plan of Baton Rouge, Inc., a lender, against Willie J. Talbert, a borrower, to collect the balance due on a promissory note. The suit was dismissed in the trial court. On appeal to the First Circuit, the trial court judgment was reversed, and judgment was rendered in favor of Budget Plan against Talbert for $704.39, with interest at eight percent per annum from December 5, 1969 until paid, plus an additional twenty percent thereon as attorneys' fees, and for costs, all as prayed for. La.App., 258 So.2d 622. Writs were granted on Talbert's application. 261 La. 535, 260 So.2d 320.

I.
The issue upon which the Court of Appeal decided the case is formed by an objection to evidence sought to be elicited by defendant Talbert on the ground that it enlarged the pleadings.
In its petition Budget Plan alleged that Talbert was indebted in the sum of $704.39 plus interest and attorneys' fees. There is an allegation that Budget Plan was the holder and owner for value in due course before maturity of a promissory note dated November 14, 1967 in the original sum of $1,512, executed by Talbert, payable to the order of Budget Plan in 24 consecutive monthly installments of $63 each, plus interest at the rate of eight percent per annum from maturity until paid; said note stipulating that in case of default the entire balance should become immediately due and exigible, with attorneys fees, principal and interest. It was further alleged that Talbert had defaulted so that attorneys' fees were due and that amicable demand was made without avail.
Talbert filed his answer in which the allegations of fact in the petition were denied. Further answering he alleged:
... defendant shows that the note sued on herein contains capitalized interest, and that this suit includes an attempt to collect capitalized interest from the date of acceleration of the note to its maturity, and in violation of the laws of this State that the holder of a note containing capitalized interest who accelerates the maturity of said note is obliged to remit in full all interest from the date of acceleration to the maturity of the note. Defendant further shows that this note is a contract for the payment of interest in excess of that authorized by law and, hence, pursuant to R.S. 9:3501, plaintiff is required to forfeit the entire amount of interest represented in said note. Defendant specially reserves the right to bring a reconventional demand against plaintiff if it appears that on the trial of this matter the payments heretofore made by defendant are in excess of the principal sum owed on said note after deduction of the capitalized interest.
Talbert also propounded interrogatories to Budget Plan in which he asked for a copy of the note sued upon and any previous note or notes for which the note sued upon was a renewal. Information was also sought as to the disbursements made by Budget Plan at the time of the original loan and each renewal, the documentary evidence held to prove these disbursements, and the payments made by Talbert on the note. The interrogatories also inquired when Budget Plan claimed Talbert defaulted on the note sued on and when Budget Plan exercised its option to mature the note under the acceleration clause.
In answer to these interrogatories, Budget Plan furnished copies of the notes. It set forth the disbursements made at the time of the original loan and at the time of the loan sued upon. Copies of cancelled checks and ledger cards were supplied supporting these disbursements. The ledger cards also itemized each payment made by Talbert. Default was said to have occurred on October 13, 1969, and the option to mature the note under the acceleration clause was exercised on October 13, 1969.
*300 At the trial counsel for Budget Plan introduced the note in evidence and by the business records and the manager's testimony proved the balance due. On cross-examination Talbert's counsel asked the manager if Budget Plan's records contained the disbursements made in connection with the loan. Objection was made by counsel for Budget Plan stating that the pleadings alleged no ground upon which the evidence sought could be elicited. It was moreover objected that the question was an attempt to expand the issues. When the objection was overruled, it was made general to any question seeking information supporting a credit for unearned interest, counsel stating that these facts were not pleaded and the questioning was an expansion of the pleadings. Thereafter objection was made to any reference to the previous note.
The trial judge allowed the questions and answers, permitting the note to be introduced, all subject to a later ruling to be made after study of written memoranda. In addition, over objection, Talbert's counsel was permitted to introduce the interrogatories, answers and attachments. On the basis of the evidence received the trial judge dismissed plaintiff's suit. As already noted the Court of Appeal reversed, holding that defendant's defense was not affirmatively pleaded.
In brief to this Court counsel for Budget Plan states the issue to be: "Relator (Talbert) failed to plead any material fact supporting the supposed affirmative defense of usury that he tried to allege by way of conclusions of law."
To support its position Budget Plan contends the claim of usury is an affirmative defense which must be set forth affirmatively in the answer as required by Article 1005 of the Code of Civil Procedure.[1] According to counsel, this was not done. Further argument points out that the traditional requirement of fact pleading in Louisiana now embodied in Articles 854, 891, 1003 through 1005 of the Code of Civil Procedure is not satisfied by the answer.
Budget Plan asserts another position, arguing that when evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the Court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby. La.Code Civil P. art. 1154.[2] However, notwithstanding the availability of the procedural device of amendment to supply the deficiencies of *301 Talbert's answer, no effort has been made at any stage of this litigation to cure the defect.
The Court of Appeal agreed with these contentions saying:
The answer of the defendant in the instant case fails to allege any particular facts to support the general allegations or conclusions of illegality or usury and defendant did not attempt to amend his answer. The evidence on which the trial judge based his opinion should not have been admitted and considered after plaintiff's timely objection thereto.
By citing and referring to Section 3501 of Title 9 of the Revised Statutes Talbert pleaded extinguishment of the obligation to pay interest by forfeiture of the interest on account of a stipulation for interest in excess of that authorized by law. This is an affirmative defense. In unmistakable terms the statute relied upon provides: "Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted." By alleging that the note sued on is a contract for the payment of interest in excess of that authorized by law and that plaintiff is, therefore, required to forfeit the entire amount of interest, defendant Talbert has pleaded "extinguishment of the obligation," at least insofar as interest is concerned, as contemplated in Article 1005 of the Code of Civil Procedure. See La.Civil Code arts. 2031 and 2130. The question, then, is whether the answer alleges sufficient facts to meet the requirements of Louisiana's traditional system of pleading.
Conceding that the answer does not satisfy the requirement of fact pleading and that the allegations are more properly to be considered conclusions of law, the full context of facts and circumstances of record surrounding the issue does not warrant a holding that the answer is fatally defective.
The requirement of affirmatively pleading extinguishment of a debt or "any other matter constituting an affirmative defense has for its purpose the giving of fair notice of the nature of the defense, and preventing surprise." Roberts v. Meche, 204 So.2d 592 (La.App.1967). See Davis-Delcambre Motors, Inc. v. Simon, 154 So.2d 775 (La.App.1963); Norman v. City of Shreveport, 141 So.2d 903 (La.App.1962); and source provision Rule 8(c) Federal Rules of Civil Procedure (28 U.S.C.A.); also Edmonds v. United States, 148 F.Supp. 185 (D.C.Wis.1957); Sly v. United States, 125 F.Supp. 89 (D.C.Ill.1954).
Recognizing that fair notice of the nature of the defense and preventing surprise are the objects of the requirement that affirmative defenses must be affirmatively pleaded, it cannot be said that these elements are lacking here. Counsel for Budget Plan had in his possession at the time of the trial, available for introduction into evidence, the first note executed by Talbert, the payment ledger sheet, and the cancelled checks showing actual disbursements on the first loan. Long prior to the trial, as the record indicates, Talbert propounded interrogatories to Budget Plan to obtain production of these documents. Budget Plan was not surprised by any aspect of the affirmative defense. Indeed, at no time during the trial or in subsequent proceedings has counsel stated that he was surprised. The issue plainly posed by the answer was a narrow one with limited facts needed to present it. Plaintiff was fully aware of these facts, with all documents needed to prove them in its possession.
Moreover, Talbert denied the allegations of Budget Plan's petition that it was the "holder and owner for value" of the note sued upon. Therefore, the questions propounded by defense counsel were proper rebuttal within the scope of the pleadings, pertaining as the question did to the "value" furnished for the note. Recently we said, "An affirmative defense or *302 special plea is not necessary to permit the introduction of evidence which tends to rebut evidence introduced by the plaintiff in the proof of his case." Smith v. Louisiana Bank and Trust Co., La., 272 So.2d 678 (1973).
Notwithstanding the established system of fact pleading in our State, when all facts have in reality been disclosed, as here, and fair notice is given to all parties with no surprise claimed, substance would be sacrificed for wooden adherence to technicality to insist that a judgment rendered on this basis cannot stand.
The discovery device utilized here (interrogatories under Article 1491) and others permitted by the Code (La. Code Civil P. arts. 1551 and 1421 through 1515) were designed for simplifying the issues and disclosing the facts in keeping with the philosophy of our procedural law, now expressed in these articles:
Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief. (La. Code Civil P. art. 862).
* * * * * *
Every pleading shall be so construed as to do substantial justice. (Ibid. art. 865).
* * * * * *
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal... (Ibid. art. 2164).
* * * * * *
The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves. (Ibid. art. 5051).
Technical objections and harsh rules of pleading are not favored in our courts. Pleadings should be liberally construed, relaxing the technical rules in order to arrive at the truth, afford a litigant his day in court, and avoid a miscarriage of justice. Succession of Smith, 247 La. 921, 175 So.2d 269 (1965); Breaux v. Laird, 230 La. 221, 88 So.2d 33 (1956); West v. Ray, 210 La. 25, 26 So.2d 221 (1946).
In this matter we are of the opinion the Court of Appeal was too insistent upon strict adherence to fact pleading. The plea of usury or extinguishment should have been considered, for, in addition to the reasons already stated, "... where usury is a defense to a suit on a promissory note ... it is permissible for the defendant to show said usury whether same was given by way of discount or otherwise, by any competent evidence." La. Civil Code art. 2924.

II.
On the merits, these are the relevant facts: The initial loan to Talbert on June 6, 1967, was represented by a note in the principal amount of $1,200, due in 24 installments with interest at 8 percent per annum from maturity. Actual disbursements on Talbert's behalf amounted to $724.50. The difference of $475.50, therefore, was capitalized interest for two years.
Later, in November, Talbert borrowed an additional $200 from Budget Plan, and, to secure that amount, refinanced his existing loan on which there was then a balance due of $1,055. The new loan was represented by a note dated November 14, 1967 in the principal amount of $1,512, payable in 24 equal monthly installments of $63 each, with interest at the rate of 8 percent from maturity. Disbursements on this latter loan were $1,055 applied to the payment of the balance then due on the previous loan, a check for $200 issued to Talbert and $25 expended for recording fees, representing total disbursements of $1,280. The difference between the $1,280 disbursed and the $1,512 principal of the note, *303 or $232, was the capitalized interest for two years on the new notethe note sued upon in this case.
When Talbert defaulted in the payments in October 1969, suit was instituted by Budget Plan on the second note, accelerating the entire balance due in principal, interest and attorneys' fees.
The theory of Talbert's plea of usury is that the note sued upon contains capitalized interest. And where the holder of a note that contains capitalized interest accelerates the maturity, he must remit to the obligor all unearned capitalized interest from the date of acceleration to the date of maturity. Further, where the holder accelerates the note's maturity without a remission of unearned interest and collects or attempts to collect all of the capitalized interest plus interest at the highest legal rate from maturity, plus late charges, and/or bonuses for extensions of time, the note is usurious. For this reason Talbert says Budget Plan must forfeit all interest as required by Section 3501 of Title 9 of the Revised Statutes. This would, according to Talbert's contention, include capitalized interest not only on the note sued upon, but also on the first note which was refinanced. The theory being that by requiring that the first note be refinanced maturity was also accelerated on that note by Budget Plan, the holder, making remission of the unearned capitalized interest necessary on that note. Therefore, after the unearned capitalized interest on both notes is remitted, and that amount is credited to Talbert's account, payments made by Talbert will be found to exceed the remaining balance of the note, hence Talbert owes nothing.
The defense theory is founded upon the proposition that remission of unearned interest is necessary for by accelerating the maturity the holder of the note would, without remission, collect unearned capitalized interest, plus the stipulated 8 percent from maturity making the interest exceed 8 percent, a usurious rate contrary to the 8 percent limitation on interest rates fixed by Article 2924 of the Civil Code. This theory accepts as a fact that when the maximum 8 percent from maturity is stipulated, nothing else but the earned capitalized interest can be charged.
The propositions relied upon are supported by decisions of this court and the Courts of Appeal. In 1895 the case of Williams' Heirs v. Douglass, 47 La.Ann. 1277, 17 So. 805, announced the rule upon which Talbert bases his defense: Where the holder of a note that contains capitalized interest accelerates the maturity, he must remit to the maker all unearned capitalized interest from the date of acceleration to the date of maturity. See also Vosbein v. Leopold, 230 La. 21, 87 So.2d 715 (1956); Preferred Investment Corp. v. Denson, 251 So.2d 455 (La.App.1971); Berger v. DeSalvo, 156 So.2d 323 (La.App.1963). The principal was again approved in Unity Plan Finance Co. v. Green, 179 La. 1070, 155 So. 900 (1934), interpreting the decision in Williams' Heirs as follows:
... the court held that the stipulation in the contract, that a failure to pay any one note at maturity would mature all remaining notes, was a lawful stipulation, even though the interest on all of the notes for the whole term of the loan was retained by the lender as discount. Hence it was held that the borrower could not, by his own default or breach of the contract, render the contract usurious; but it was likewise held that the lender, who availed himself of his right to demand payment of the debt before the expiration of the term for which the interest had been paid, was obliged to remit the unearned interest.
The significance of this latter decision to the issue presented for decision in the case at bar is the holding that when the maturity of the obligation is accelerated at the instance of the borrower, his action cannot transpose an otherwise valid contract into a usurious one. The logic of this rationale *304 is persuasive. If it were otherwise, the maker of a note could at any time accelerate its maturity in one of several ways: by payment, by defaulting in his payments, refinancing, etc., and thereby convert the obligation providing for discounted interest into a usurious transaction. In effect the maker could thereby effectively and unilaterally nullify his voluntary obligation to pay capitalized interest. Capitalization of interest has long been permitted in our law as it was at the time of this transaction by this paragraph of Article 2924 of the Civil Code:
The owner of any promissory note, bond or other written evidence of debt for the payment of money to order or bearer or transferrable [transferable] by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding said promissory note [,] bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount than eight per cent per annum; provided such obligation shall not bear more than eight per cent per annum after maturity until paid.
Discount has been said to be different from interest. It entails an evaluation by the creditor of the element of risk, the gamble of releasing capital against the chances of gain or the probabilities of loss. Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (1960); General Securities Co., Inc. v. Jumonville, 216 La. 681, 44 So.2d 702 (1950).
In Williams v. Alphonse Mortgage Company, 144 So.2d 600 (La.App.1962) the Court of Appeal held that when the maker of the note accelerated the maturity no right existed to claim remission of the unearned capitalized interest. This holding gave effect to the expressions in Unity Plan Finance Co. v. Green, supra. The rule was referred to with approval in Berger v. DeSalvo, 156 So.2d 232 (La.App.1963). In Clasen v. Excel Finance Causeway, Inc., 170 So.2d 924 (La.App.1965), the matter was again considered. The Court saying:
... the lower court was of the opinion that the rationale appearing in the case of Berger v. DeSalvo required a proportionate rebate of interest on a note that is paid prior to the expiration of its full term at the sole election of the borrower. However, an analysis of the Berger case reveals that the refund must be made only when the creditor initiates the prepayment of the loan.
In Consolidated Loans, Inc. v. Smith, 190 So.2d 522 (La.App.1966), the rule as then evolved was clearly stated in these terms:
... where the holder of the note elects to accelerate maturity, he thereby remits the unearned capitalized interest, but where the maker or obligor elects to pay the indebtedness in advance of maturity no remission can be claimed.
See also Associates Discount Corporation v. Solar, 209 So.2d 127 (La.App.1968), quoting and approving the rule as stated in Consolidated Loans, Inc. v. Smith, supra.
Merit Finance Company v. Voorhies, 241 So.2d 90 (La.App.1970) presented the narrow issue, whether the refinancing of discounted loans prior to maturity involved a voluntary prepayment denying the debtor credit for the unearned capitalized interest. In holding that the debtor was not entitled to a remission of the unearned interest, the court said: "Since there is no evidence in the record to show any fraud or coercion the refinancing transactions must be held as voluntary payments, and defendant not entitled to credit for the unearned capitalized interest."
Again, in Thrift Funds of Baton Rouge, Inc. v. Jones, 259 So.2d 587 (La.App.1972), the rule was stated thus:
It is settled law that absent fraud or coercion ... the voluntary refinancing of a discounted loan constitutes a *305 willing prepayment pursuant to which the debtor is not entitled to credit for the unearned capitalized interest due and remaining unpaid.
The rule we have referred to has been recognized and applied by the federal court in the Walter E. Heller & Company v. Mall, Inc., 267 F.Supp. 343 (E.D.La.1967), viz.:
Thus it is clear that when the holder of a note, because of default by the maker, makes use of an acceleration clause contained therein to declare all unpaid payments immediately due and exigible, he must remit all capitalized, unearned interest or discount as of that date. This is not the case when the maker elects to pre-pay the note. In such a case, the maker is obligated to pay the full face amount of the note, including unearned interest or discount.
Stated in the context of the rule of law announced in the foregoing cases, Talbert's contention is that the maturity of the first (refinanced) note was accelerated by the holder Budget Plan. A remission of unearned interest was therefore required on the first note. Therefore, in addition to the capitalized interest in the second note, Budget Plan included in the second note interest which should have been remitted in the first note. This extra charge is therefore in addition to the maximum 8 percent interest stipulated in the second note. Under these circumstances the extra charge, over the legitimate 8 percent, which is not capitalized interest, makes the transaction usurious.
The crucial issue on this phase of the case revolves around the refinancing transaction and whether it amounts to an acceleration of the maturity of the first note by the holder or maker. In the absence of fraud or coercion such a refinancing transaction has been held to be an acceleration of maturity by the maker of the note and the maker is not entitled to a remission of the unearned portion of capitalized interest. Merit Finance Co. v. Voorhies, supra.
Thus the inquiry is narrowed to a question of whether the refinancing was induced by fraud or coercion. Since Talbert's counsel readily conceded in oral argument that fraud was not claimed, the issue is further confined to whether the refinancing transaction was induced by coercion or was it a voluntary transaction insofar as Talbert is concerned.
There is little or no evidence on the point. The second note is signed by Talbert refinancing the first note, just as the first note was signed. It is also signed by his wife, Georgia B. Talbot. Budget Plan's business records were introduced to show the disbursements made at the time of refinancing. Talbert called no witnesses to support his claim that the refinancing transaction was involuntary on his part. At the time of the refinancing Talbert was in arrears in his payments, but no evidence indicates that because of this Budget Plan accelerated the note's maturity.
To the contrary, by Talbert's own testimony he went to Budget Plan to make a loan to get a car (the first note), and "after I paid on it I went back for an additional amount of money." He then testified that he wanted $200. When asked what happened, he replied, "I thought I was going to make a new note and he added it to the old note." Asked whether the signature on the note sued upon was his, he answered, "No, after I signed the papers for the new money I borrowed, he then told me it would be added to my old note and would bring my payments up $5.00 or $6.00 more per month." This is the only evidence to support the claim that refinancing of the first note was not Talbert's voluntary transaction.
Without analyzing Talbert's testimony in detail, it is sufficient to say that no claim is made at any stage of the proceeding that Talbert did not sign the note sued upon. To the contrary, by denying the validity of the interest charges, that is, by pleading partial "extinguishment of the obligation by usury," Talbert's answer, prepared by *306 his counsel, inferentially admits the signing of the note. The signature on both notes are before usthey are the same. We make this point to show that Talbert's testimony denying that he signed, such as it is, is not entitled to sufficient weight to discharge the burden the law places upon him to establish an affirmative defense.
To sanction the repudiation of written obligations on such sparse and inadequate evidence would do violence to business transaction confected upon settled principles. It is necessary to hold, therefore, that the maturity of the first note was not accelerated by the holder but acceleration occurred by refinancing that obligation at the instance of the maker Talbert. No remission of the capitalized interest was therefore due on the first note for which Talbert might claim credit.
Cases interpreting Article 2924 of the Civil Code have consistently held that where interest and principal is capitalized in a new note, even though the interest included in the capitalized amount was usurious, recovery could be had in full on the note. Vosbein v. Leopold, 230 La. 21, 87 So.2d 715 (1956); Turregano v. Barnett, 127 La. 620, 53 So. 884 (1911); General Securities Co. v. Jumonville, 216 La. 681, 44 So.2d 702 (1950).
In Vosbein v. Leopold, supra, the evidence was that defendant paid interest at the rate of 18 percent on the original loan, and in some instances more. The principal of this original loan, with usurious interest, was included in a new note as capitalized interest, and it was held that no relief could be allowed against collection of the refinanced obligation on the basis of claimed usury.
With this understanding of the law, we consider the first note to be a settled issue and all claims of usury must be supported by the terms and conditions of the second note as refinanced. At the outset it is necessary to meet the contention that maturity of the second note was accelerated by Budget Plan, the holder. This note provides for capitalized interest and interest at maturity at the maximum rate of 8 percent per annum. It contains an acceleration clause in the event of default of any payment.
Actually, insofar as this second note is concerned, essentially all the discounted or capitalized interest was earned by Budget Plan. The last of the 24 installments would have become due on December 5, 1969. This suit, according to the file date on the petition, was not filed or the note accelerated or matured until November 19, 1969. It is nevertheless an acceleration of maturity by the holder requiring the remission of the unearned portion of capitalized interest. For this suit on the second note falls within the rule announced in Williams Heirs v. Douglass, 47 La.Ann. 1277, 17 So. 805 (1895), and the cases decided on that authority.
In addition to this acceleration of maturity by the holder of the note, payment and ledger cards introduced in evidence show at least three entries made for extensions of time for payments. Together, these payments amount to $47.00. These payments, coupled with the failure to remit the unearned capitalized interest, as we understand Talbert's argument, amount to usurious interest which requires a forfeiture of all interest and charges, other than principal, on the second notethe note sued upon.
The general rule on this point is stated in Chadwick v. Menard, 104 La. 38, 28 So. 933 (1900), as follows:
... the hire of money is excessive and usurious if not included within the terms of the statute usually adopted to cover an excess over the conventional rate; that usury is against public policy, and that excessive rates of interest agreed upon are not to be sanctioned unless they fall within the express provisions of the law; that interest not capitalized, in excess of the conventional *307 rate, for the extension of the payment of a loan, is not considered legal consideration. ...
The statute compelling forfeiture of interest, to which reference was made previously provides that "Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted." (La.R.S. 9:3501).
Under these circumstances, we hold that these payments for extension of time, not capitalized in the note, make the interest charge usurious. No consideration was given for these payments. They were in effect penalties for late payments. These payments are unlike the facts in Robinson Lumber Co. v. Tracka & Boudreau, 173 La. 461, 137 So. 853 (1931), where an extension of time was obtained by a borrower who gained thereby additional time to cut and remove timber from mortgaged timber rights, which extension enabled him to derive a profit he could not otherwise have made in the limited time before the note was due. This was not the usual advantages of a mere extension, the court held, and the payments for extension would not be treated as mere interest subject to the usury limitation of Article 2924 of the Civil Code. In the case at bar, no special advantage was enjoyed by the borrower other than the usual advantage of an extension.
Thus the payments for extension of time in addition to the 8 percent and capitalized interest make the contract usurious on the note sued upon in the instant case. According to our computation, the principal of the note consisted of the $1,055, balance due on first note; $200 additional money loaned to Talbert and $25 expended for recording fees, or a total principal amount of $1,280. The capitalized interest in the amount of $232 is forfeited. The ledger card shows Talbert has paid $914, including payments for extensions of time, all of which must be applied to the reduction of the principal. The unliquidated balance due is therefore $366, and judgment should be rendered in favor of Budget Plan in that amount.
For the reasons assigned, judgment is rendered in favor of Budget Plan of Baton Rouge, Inc., and against Willie J. Talbert in the sum of $366, plus 20 percent of $366 as attorneys' fees and for all costs of these proceedings.
BARHAM, J., concurs.
DIXON, J., dissents.
TATE, Justice (concurring).
The writer concurs, with the following reservations:
(1) The majority correctly finds that evidence as to the defense of usury is admissible under the pleadings. However, I do not agree that the ultimate facts were not sufficiently pleaded, as the majority suggests. If the facts needed elaboration (I doubt that the defendant is required to plead specific amounts and dates of capitalized interest, such evidentiary facts being more properly ascertained at the trial) as to the general scheme of factual overcharge, the failure to file an exception of vagueness waived any such deficiency.
Nevertheless, I fully concur with the majority's essential premise that, in the absence of surprise, the belated attempt to restrict the proof by technical deficiency of the pleading cannot be countenanced under modern Louisiana civil procedure.
(2) The defendant-appellee presents an excellent argument that the courts have misconstrued the legislative intent of Civil Code Article 2924 in Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (1960) and the earlier jurisprudence upon which it relies. The argument concerns the proper interpretation of the 1856 and 1860 legislation codified in the article as exceptions (paragraphs 6 and 7) to the eight per cent maximum conventional interest authorized. The argument is the legislation authorizing *308 collection of excess interest was intended to authorize such collection by way of discount only by holders in due coursethe "owner" of such a note, in the parlance of the times, referred not to the payee, but to the transferee in good faith of the original payee or holder. Until this Court re-examines the present rather strained construction of the statute, permitting unlimited interest by way of discount, I shall nevertheless adhere to the Mayfield v. Nunn interpretation.
(3) The majority cites Vosbein v. Leopold, 230 La. 21, 87 So.2d 715 (1956) as holding that recovery may be had on the full value of a new note which includes new principal, even though the face amount includes usurious interest.
The language of Vosbein might indicate such to be the holding, although the facts do not. Examination of the actual record in this Court indicates minimal if any illegally usurious interest was included in the $4,200 principal of the note on which recovery was allowed. Conventional interest after maturity of an earlier note had been collected at the rate of 18% per annum (by way of forbearance), and the contention was made that such cash payments should have been credited to the principal due on the earlier note rather than pocketed as interest.
Vosbein is not authority that illegal usurious interest claimed due can be validly collected by adding a small cash advance and then renewing an old unenforceable note into a new and valid obligation including illegally usurious interest. The jurisprudence of this state since Rosenda v. Zabriskie, 4 Rob. 493 (1843), has held that a promise to pay usurious interest is not a natural obligation and cannot form a valid consideration for a new promise to pay. See also Commonwealth Finance Co. v. Livingston, 12 So.2d 44 (La.App.Orl.1943).
(4) The chief basis on which it is contended "usurious" interest from the refinanced note forms part of the consideration for the new note is the lender's failure to remit the capitalized interest contained therein (and thus not earned, since refinanced after only five months).
Under current jurisprudence, mostly of the intermediate courts, the lender is not required to remit such unearned interest unless the prepayment of the debt due is accelerated at the instance of the lender. Since (we find) the borrower accelerated the balance duei.e., by asking for an additional $200 and not objecting to the finance company's issuance of a refinanced note including an additional $232 capitalized interest for use of this money on a descending balance over 24 months[1],we find he cannot complain of the inclusion of unearned capitalized interest in the new balance.
The defendant borrower contends quite forcefully that there is an illogic, from the point of view of determining usury, in permitting retention of unearned interest on the basis of whether, technically, the borrower or the lender requests acceleration. The present is an instance of the difficulties of making such determinations in the gray area of an unlettered borrower's simple attempt to obtain a new cash advance, with his "request" for acceleration being measured in terms dictated by a sophisticated finance-lending technique run by skilled lenders. Nevertheless, based on the policy reasons noted by the majority, I am not prepared as yet to say that this illogical and difficult-to-administer test is not the most socially practical.
With these reservations, I subscribe to the majority opinion.
NOTES
[1] La.Code Civil P. art. 1005 provides:

"The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation."
[2] La.Code Civil P. art. 1154 provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
[1] Of course, the $232 charges were not only for use of the new $200 cash advance, but also for use of the $1,055 balance (including about 5/12th capitalized interest) of the old note for an additional six months.