280 So.2d 888 (1973)
FIRST NATIONAL BANK OF JEFFERSON PARISH
v.
Gunter KINDERMANN.
No. 5496.
Court of Appeal of Louisiana, Fourth Circuit.
June 19, 1973.
Rehearing Denied August 7, 1973.
Writ Refused September 26, 1973.
*889 White, Fray & White, Robert H. Fray, Gretna, for plaintiff-appellant.
Kronlage, Dittmann & Caswell, Charles A. Kronlage, Jr., New Orleans, for defendant-appellee.
Before REDMANN, STOULIG and BAILES, JJ.
STOULIG, Judge.
Plaintiff, First National Bank of Jefferson Parish, has appealed a judgment dismissing its suit on a promissory note. The bank filed suit for the unpaid balance of $3,368.16, together with interest and attorney's fees. Within three months of the filing of the petition, defendant, Gunter Kindermann, paid the bank $3,368.16. Thus the primary issue litigated in the trial court was whether, under the terms of the note, defendant was liable for attorney's fees incurred by the bank in collecting the unpaid balance. In its judgment the trial court stated that "* * * plaintiff * * * has not sustained the burden of proof of its allegation * * *."
At the outset it should be noted that the defendant was not personally present at the trial but he was vigorously and capably represented by A. Russell Roberts, curator ad hoc.
These are the facts: On December 11, 1968, Gunter Kindermann of Victoria, Australia, as maker, signed a promissory note containing these provisions:
"For value received I promise to pay to the order of First National Bank of Jefferson Parish Eight thousand two hundred fifty-nine and 82/100 Dollars at the First National Bank of Jefferson Parish, Gretna, La., instalments as outlined below with interest from maturity at eight per cent per annum until paid with all costs of collection, including twenty-five per cent attorney's fees if collected by law, or through an attorney at law.

"* * * If the maker * * * shall fail to pay any instalment at its maturity, this note * * * shall, at the option of the bank, become due and payable. * * *" (Emphasis supplied.)
On the instructions of the maker, the proceeds of the loan were deposited in the account of Deep Sea Divers, Inc., a local branch of an Australian corporation in which defendant had an interest. This disbursement of the fund was authorized by defendant in his letter dated December 17, 1968, addressed to Deep Sea Divers, Inc., Belle Chasse, Louisiana, in the following language:
"I refer to the proceeds of a personal loan issued to me, Gunter Wilhelm Kindermann, by the First National Bank of Jefferson Parish, Louisiana, in accordance with the Promissory Note signed by my hand dated 11 December 1968. I hereby authorize that these proceeds should be made directly payable to the banking account of Deep Sea Divers, Inc. of Belle Chasse, Louisiana in full." (Emphasis added.)
The prescribed monthly payments of $230 were promptly remitted through August, 1970. Five days after the September installment became delinquent, a past due notice was sent to defendant at 23 Glass Street, N. Melborne, Victoria, Australia. On October 7, 1970, Randolph Cullom, the bank's collection credit manager, wrote a polite letter reminding defendant the September installment was not received and requesting payment.
Within the following month, defendant apparently contacted Steven Mason, his attorney in New Orleans, for an opinion as to whether he was personally liable on the note in view of the fact that the loan proceeds were deposited to the account of and *890 all monthly payments were made by Deep Sea Divers, Inc.
In his letter of November 6, 1970, Edward J. McMahon III, one of plaintiff's assistant managers, advised defendant's attorney all payments received on the note were drawn on the account of Deep Sea Divers, Inc., in Belle Chasse. He also transmitted photocopies of documents Mason apparently requested to formulate a legal opinion as to his client's liability. A carbon copy of this letter was sent to defendant.
By December 29, 1970, at which time the note was three months in arrears and the defendant had been apparently advised of his liability by his attorney, Cullom transmitted the following letter to Mr. Kindermann:
"It is my understanding that you will not read this until January 15th because you are out in the field. I am writing you in regard to your loan, # XXX-XXX-X, which is past due $920.00. I have spoken to your attorney, Mr. Steve Mason, and he told me that he advised you to pay this loan.
"I am requesting you to call me long-distance and letting me know what you intend to do about this matter. If I do not hear from you by January 22nd, I will take legal action to protect the Bank's interest."
The plaintiff received no response from the defendant by January 22, and the note was turned over to plaintiff's attorneys for collection on February 2, 1971. Without writing a demand letter advising defendant that the bank had exercised its option to accelerate the maturity of the note, plaintiff filed suit on February 11, 1971. To obtain jurisdiction, plaintiff filed an in rem proceeding, causing a writ of attachment to issue against real estate located in Jefferson Parish owned by defendant.
On March 30, 1971, apparently in response to defendant's inquiry as to the balance due, plaintiff's attorney sent defendant an itemized statement totaling $4,456.33. In addition to the unpaid balance of $3,368.16, this sum included $853.25 attorney's fees, court costs, and interest.
In May, 1971, defendant forwarded a payment of $3,368.16 to the bank. Subsequently in January of 1971, the defendant personally visited Mr. McMahon at the bank. According to McMahon's testimony, Mr. Kindermann stated he intended to pay whatever balance was due. McMahon then suggested he consult the bank's attorney which the defendant apparently failed to do.
In the light of the summarized facts, we must determine whether defendant's agreement, "* * * I promise to pay * * * all costs of collection, including twenty-five per cent attorney's fees if collected by law, or through an attorney at law," is binding.
The cases cited by each litigant to support their respective positions turn on the proposition that the wording of the note is the determining factor. Plaintiff relies on Maurin v. Adam Lumber Company, Inc., 140 So.2d 804 (La.App. 4th Cir. 1962), wherein attorney's fees were allowed. Defendant cites St. Charles Dairy v. Hayes, 233 La. 217, 96 So.2d 494 (1957), wherein attorney's fees were denied. Both are factually distinguishable from this case, and, in passing, we note the equities appear to be with the successful litigant in each instance.
In the St. Charles Dairy case, suit was filed 15 days after the first installment of a $2,910 note became due without defendant having been notified either that the note was accelerated because of nonpayment or that suit would be filed. According to the recited facts, the maker attempted to timely tender payment by depositing it in the mail chute of the office door of plaintiff's attorney; however, it was not received. Also, the special delivery letter sent by plaintiff's attorney notifying the defendant that the installment was due on the following day was not received. Further, *891 the note provided: "In the event it becomes necessary to place this note, or any renewal thereof, in the hands of an attorney for collection or suit, I agree to pay twenty-five (25%) per cent on the amount of the note as attorney's fees * * *." (Emphasis added.)
It may be surmised from reading these facts in the St. Charles Dairy case that the holder, rather than pressing for payment, was attempting to avoid tender in order to enforce the penalty provision of attorney's fees. The Supreme Court pointed out the attorney's fees clause is an agreement for liquidated damages. Since it provided the fees were due if it became necessary to collect through an attorney, plaintiff bore the burden of proving the note was uncollectible without legal assistance. Because no demand for payment was made after the first installment became delinquent, the court found there was no evidence in the record that the holder of the note made any reasonable effort to obtain payment in full or that such an effort would have been impractical and useless before placing the matter in the hands of an attorney. Thus it failed to prove that it was "necessary * * * to place this note in the hands of an attorney for collection * * *."
In Maurin, the note provided that the fee clause would become exigible "in the event this note is not paid at its maturity and is placed in the hands of an attorney at law for collection * * *." The court reasoned that, because the contract provided nonpayment at maturity as the only prerequisite necessary to activate the assessment of attorney's fees if placed in the hands of an attorney for collection, the mere showing of nonpayment coupled with the maturity of the obligation was sufficient. In so doing, it distinguished the St. Charles Dairy matter from the case before it on the wording of the note itself. From an equitable standpoint, we note the holder in Maurin did make diligent efforts to obtain payment before consulting an attorney.
In the instant case, defendant would have us read into the fee clause the "necessity for legal action proviso" that appeared in the St. Charles Dairy note. It is not there. Defendant maintains the verbiage quoad attorney's fees is ambiguous, and, under the rule of Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939), should be construed against plaintiff who drafted the instrument. While we agree it would have been possible to express the fee clause with more clarity, we conclude the note manifests an intent by the maker to bind himself for these fees in the event it was collected either by legal action or through an attorney.
When the defendant signed the note, which constituted a contract and the law between the parties governing its subject matter, he became obligated for these fees in the event the collection of the note had to be effected "by law, or by an attorney at law." The bank made several attempts to collect the delinquent installments and in its third written notice sent by mail to the defendant, he was given three weeks to comply and was specifically informed that should he fail to do so the bank would "take legal action to protect the bank's interest." Under the contract, the maker had agreed that failure to timely pay any installment would accelerate the maturity of the note at the option of the bank. Though Mr. Kindermann was not specifically advised that the maturity of the note had been accelerated, the bank's letter dated December 29, 1970, indicated its intention to protect its interest by legal action. The only reasonable import of this letter is that the bank would protect its interest as to all of the remaining unpaid installments rather than merely the delinquent ones.
Although we do not interpret the fee clause in this note as placing a burden on plaintiff to prove it was necessary to resort to an attorney, we think the evidence demonstrates the plaintiff made every reasonable effort to obtain payment without *892 imposing the additional liability of the penalty clause on defendant.
The note in question bore 8-percent interest. Plaintiff accelerated the maturity of the entire balance on February 1, 1971, and gave defendant an unearned interest credit of $291.66 on the discounted note. It is not clearly established on what date defendant paid the $3,368.16. One bank official stated it was in May of 1971. A telegram sent April 22, 1971 by plaintiff to defendant indicates payment had not been received on that date; however, the bank's attorney fixes the date of payment as "on or about April 9, 1971." Plaintiff is entitled to 8-percent interest on the principal of $3,368.16 from February 1, 1971 until it was paid, and because of the de minimus amount of the interest involved, we will accept the approximation of April 9, 1971.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the First National Bank of Jefferson Parish and against the defendant, Gunter Kindermann, in the full sum of Three Thousand Six Hundred Fifty-nine and 82/100 Dollars ($3,659.82) less a discount refund of $291.56, together with 8-percent interest thereon from February 1, 1971 through April 9, 1971, and 25-percent attorney's fees on the principal and interest subject to an additional credit of $3,368.16. It is further ordered that the writ of attachment dissolved by the trial court judgment is hereby reinstated. Defendant is to pay all costs of this litigation.
Reversed and rendered.
REDMANN, Judge (dissenting).
Even if attorney's fees were due, plaintiff has already been paid more than principal and the specified attorney's fee. No interest is collectible because the note included discounted interest in excess of 8% per annum, plus 8% per annum from maturity, plus 5% on each installment not paid on or before due date. The note was thus usurious and all interest is forfeited; Thrift Funds of B.R. Inc. v. Jones, La., 274 So.2d 150 (1973); Budget Plan of B. R. Inc. v. Talbert, La., 276 So.2d 297 (1973).[1] Accordingly plaintiff has already collected, in addition to principal, an amount $106.16 greater than the 25% attorney's fees.[2]
Furthermore, the note's language "if collected by law" is quite unclear in meaning and apparently without applicability. Nor was the note collected "through attorney at law" except in a very broad sense. As a penal clause, the language should be construed narrowly.
*893 At least in respect to attorney's fees on accelerated installments, St. Charles Dairy v. Hayes, 233 La. 217, 96 So.2d 494 (1957), is indistinguishable in principle. Maurin v. Adam Lbr. Co., 140 So.2d 804 (La.App. 1962), does seem to hold that attorney's fees are demandable when unnecessary, merely because the note does not expressly recite "if it becomes necessary". Yet indispensably implied in every attorney's fee clause is that only necessary services will be paid for. Thus the Supreme Court ratio in St. Charles Dairy is controlling, and our misinterpretation of it in Maurin should be expressly repudiated. Here, as in St. Charles Dairy (96 So.2d at 496-497), "so far as the record discloses, defendant was never given the opportunity of paying the note in full before it was placed in the hands of an attorney for collection or suit, and hence he never had the chance to avoid the payment of * * * attorney's fees * * *" on the entire amount of the note.
Probably St. Charles Dairy should not be construed to deny attorney's fees on pastdue installments under circumstances like ours. On our facts, however, defendant has paid $758.16 above principal and (whether or not fees were due) this is more than the total of all costs plus 25% attorney's fees on past-due installments. Defendant did not appeal nor answer appeal and we could not order return of any overpayment.
The judgment appealed from should be affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
It should be observed that usury was not an issue either in the trial court or on appeal. It was first considered in the dissenting opinion and pursued by the defendant-appellee in his application for a rehearing.
Usury is a special defense which must be specifically pleaded in order to bar the collection of interest. In the case of Budget Plan of Baton Rouge, Inc. v. Talbert, La., 276 So.2d 297 (1973), the Supreme Court specifically considered this question and by its analysis of the pleadings concluded that there was a sufficient predicate or basis for it to consider the special defense of usury. Impliedly the Court ruled that usury was a defense which had to be asserted in the responsive pleadings. Therefore, we are unable to entertain this special defense in an application for rehearing.
NOTES
[1] The plurality opinion in Budget Plan says obiter that the uncollectibility of usurious interest, R.S. 9:3501, is an affirmative defense which must be pleaded (276 So.2d at 301). The opinion treated R.S. 9:3501 as an "extinguishment of the obligation to pay interest" (emphasis added).

In our case, at least, it is plain that (1) no appearance of an enforceable obligation to pay interest ever existed: and therefore no extinguishment needed to occur (indeed Rosenda v. Zabriskie, 1843, La., 4 Rob. 493, holds that not even a natural obligation arises from a promise to pay usury); and (2) plaintiff itself sues for usurious interest under the terms of the note which is on its face usurious (8% per annum plus 5% late charges): and therefore the problem is not whether defendant could introduce evidence but whether plaintiff's own evidence should be ignored. C.C.P. art. 2164 proscribes such blindness.
(In Budget Plan, the face of the note did not disclose usury. Moreover, the opinion concluded that the unpatent usury was in fact affirmatively pleaded.)
[2] Proceeds of the $8,259.82 note were $7,000. Discounted interest was $1,049.82 and "insurance" apparently $210. Monthly payments totalled $4,600, and the last payment was $3,368.16. Accepting $7,210 as principal, payments exceeded principal by $758.16. Since principal balance at filing suit was $2,610, attorney's fees of 25% would have been $652.50.